THOMAS S. LAMBDEN and HARVEY LAMBDEN *v.* SAMUEL
B. WEST and MARY J. WEST.

Sussex March Term, 1895.

Wills — construction of; Rights of beneficiaries fixed at
   time of testator's decease, and not altered by subse-
   quent acts; Conditions precedent and subsequent in;
   Bequest of profits rising from a contract, defeated by
   abandonment of contract after testator's decease.

1. The conditions which existed at the time of the testator's
   death must be regarded as existing now, as the status of
   the parties under the will was fixed at the moment of
   his decease.

2. The testator, prior to his decease, entered into a contract
   with certain persons, by which the latter were to go
   upon his land and cut and saw the timber thereon, and
   to receive a compensation part in money and part in
   wood. The contract was in process of performance when
   the testator made his will in which he devised the land
   in fee to M. J. W. " Provided, however, that all the
   timber on the aforesaid land shall be worked as per
   contract now existing, and the rising issues therefrom
   shall be paid into my estate and be equally divided
   among my lawful heirs." Shortly after testator's de-
   cease, the contract was abandoned by the contractees,
   who were totally insolvent. Held, that M. J. W., by
   the abandonment, was entitled, under the devise of the
   fee in the land, to all the timber as well.

INJUNCTION BILL.— The facts are fully set forth in
the first portion of the opinion of the Chancellor.

A. Higgins, for complainants.

Nothing is better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted; and this, in whatever manner the direction is given, whether by will, by way of contract, marriage articles, settlement or otherwise, or whether the money is actually deposited, or only covenanted to be paid; whether the land is actually conveyed or only agreed to be conveyed; the owner of the fund, or the contracting parties, may make land money, or money land. Fletcher v. Ashburner, 1 Bro. C. C. 497, per Sir Thomas Sewall; S. C., 1 Eq. L. C. 826, 971; 1 Pom. Eq. Jur., §§ 371, 372; Sharpley v. Fernwood's Executor, 4 Harr. 336.

" Equity looks to the intent rather than to the form." " In fact, it is only by looking at the intent rather than at the form, that equity is able to treat that as done which in good conscience ought to be done." 1 Pom. Eq. Jur., § 378. Hence, in this case, the Gault contract for the sale to the Gaults by the testator of the woodleaf comes under the operation of the principle as much as if it had been a contract for the sale of the fee of the land.

The contract between the testator and Gault operated as an equitable conversion of the timber, and its interests from the time of its execution. By it Robert Lambden became the trustee of the timber for the Gaults, and they became trustees of the purchase money for Lamb-

den. 3 Pom. Eq. Jur., § 1161; 1 id., § 368; Green v. Smith, 1 Atk. 572; Pollexfen v. Moore, 3 id. 272; Atcherly v. Vernon, 10 Mod. 518.

In order to work a conversion, the contract must be valid and binding, free from inequitable imperfections, and such as a court of equity will specifically enforce against an unwilling purchaser. 3 Pom. Eq. Jur., § 1161.

" If the contract " (to sell lands) " is made upon an actual valuable consideration, and complies in other respects with the requisites prescribed by equity, then, as soon as it is executed and delivered, the vendee acquires an equitable estate in the land, subject simply to a lien in favor of the seller as security for payment of the price, while the vendor becomes the equitable owner of the purchase money." 4 Pom. Eq. Jur., § 372.

It has been held in respect of a purchaser (*e. g.*, the Gaults in this case), that, where the purchaser, at the time of his death, was under a contract to purchase realty, which then might have been specifically enforced against him, the right of his real representative was not affected by anything which took place subsequently. Fletcher v. Ashburnam, 1 Lead. Cas. in Eq. 843, 986.

Thus, if the contract was rescinded by the vendor on the ground of delay, or, under a power reserved to him in the contract, the real representative of the purchaser was entitled to receive the purchase money out of his personal estate. Whitaker v. Whitaker, 4 Bro. C. C. 31; Hudson v. Cooke, 13 L. R. Eq. 417.

If he could not be compelled to take the estate, the heir cannot insist on improving it, and that the personal estate shall pay for it.

A devisee is not to be more favored than a particular legatee.

The distinction is between cases where property is devised, charged with the payment of a sum of money, and those cases where there is an exception from the devise. If the original destination of such sums has failed, by lapse or otherwise, the question then arises whether such sums result to the heir-at-law of the testator or sink into the land for the benefit of the devisee. 1 Wh. & T. L. C. 896.

" If a devise to a particular person or for a particular purpose be intended by the testator to be an exception from the gift to the residuary devisee, the heir takes the benefit of the failure; but if it be intended to be a charge only upon the estate devised, and not an exception from the gift, the devisee will be entitled to the benefit of the failure." Cooke v. Stationers Co., 3 Myl. & Cr. 264.

There can be no doubt here that the proviso as to the timber constitutes an exception out of the devise to Mrs. West of the fee, and not a charge upon it.

The bequest is in the form of a proviso. The fee is first and explicitly devised, and then the issues arising from the timber under the Gault contract are excepted, and carved out of it. It is the bequest of the right to the timber growing on the land. It is not the bequest of money charged upon it. The timber and its issues are cut out from the fee and bequeathed to other objects.

It is made the distinct subject of this bequest. It is something taken from the devisee of the fee and given to the heirs.

Independently of the residuary clause of the will, the heirs-at-law are entitled to the timber (if the bequest of the timber be held to lapse because of the nonperformance of the Gault contract), because, by the proviso, the testator has carved a chattel interest out of the fee of the estate devised to his daughter.

When a testator carves a chattel interest out of his real estate, and makes it the subject of limitations which fail, it results to his heirs, but with the character which the testator impressed upon it. Burley v. Evelyn, 16 Sim. 290, 295; Cook v. The Stationers Co., 3 Myl. & Cr. 264; Wright v. Horne, 8 Mod. 222; Gravenor v. Hallum, Amb. 643; Ackroyd v. Smithson, 1 Wh. & T. L. C. in Eq. 896, 898.

The timber will go to the three children of the testator under the residuary clause, being item 15 of the will, when taken in connection with the proviso of item 4, directing the timber to be turned into personalty.

While it may be the rule that a mere direction to sell land for a particular purpose is not such an indication of a testator's intention to convert real into personal property, to all intents, so that the undisposed of proceeds should pass under a residuary bequest of personalty, yet, where a testator expressly declares that the money arising from the sale of real estate shall be considered as part of the personalty, it will pass under a general residuary bequest of personalty in the same will. Ackroyd v. Smithson, 1 Wh. & T. L. C. 900, 901; Kidney v. Coussmaker, 1 Ves. Jr. 436; Collins v. Wakeman, 2 id. 683; Robinson v. The Governors of London

Hospital, 10 Hare, 19, 27; Bright v. Larcher, 3 DeG. & J. 156; Field v. Pickett, 29 Beav. 568.

So, also, the intention that the proceeds of the sale of real estate should pass under a residuary bequest of personal estate may be inferred from expressions in the will irresistibly leading to such a conclusion; and the blending of the real with the personal estate has been considered as furnishing an indication of such intention. Ackroyd v. Smithson, 1 Wh. & T. L. C. 901; Byam v. Munton, 1 Russ. & My. 503; Mallabar v. Mallabar, Cas. temp. Talbot, 78; Brown v. Bigg, 7 Ves. 280; Griffiths v. Pruen, 11 Sim. 202; Bromley v. Wright, 7 Hare, 334.

But if the proceeds of this timber do not pass to the three children as residuary legatees, it is because it will go to them as heirs-at-law. In no case can it go to the devisee of the farm. Ackroyd v. Smithson (notes), 1 Wh. & T. L. C. 902, 903, and cases cited; Amphlett v. Parke, 2 Russ. & My. 221, 227, 231; Harker v. Reilly, 4 Del. Ch. 81-88; State v. Wiltbanks, Administrator, 2 Harr. 18-23; State v. West's Executor, id. 151.

A lapsed bequest of real property goes to the heir-at-law; a void one to the residuary devisee. Ferguson's Lessee v. Hedge, 1 Harr. 524.

Even if the legacy of the woodleaf should be held to have lapsed because of the failure of the Gaults to carry out the terms of the contract, the proceeds of the wood will go to *all* the children either as (1) heirs-at-law, or (2) as devisees or legatees under the residuary clause of the will.

In either case, it will not go to Mrs. West, the devisee of the fee, and the only question which has been the subject of contention is whether it should go to the heir or the residuary legatee where they happen to be different and not the same persons.

A devise of this woodleaf is to be inferred when the profits are devised; or the income being devised, the *corpus* is devised. Shepperdson v. Tower, 1 Y. & C. M. C. C. 441; 6 Jur. 658; Lorton v. Woodward, 5 Del. Ch. 505; Spring v. Stephenson, 1 Ir. Ch. 132.

A direction to raise legacies out of the rents and profits of real estate is a charge on the estate itself. Londesborough v. Somerville, 19 Beav. 295; Green v. Belchier, 1 Atk. 505; Dickin v. Barker, 14 L. J. (N. S.) Ch. 22; 8 Jur. 1098; 1 Sim. & S. 489; 4 Ves. Jr. 51.

The clause in item 4 of the will, beginning, "Provided, however, that all the timber," etc., is not a condition but a limitation, limiting the devise of Mary J. West, *i. e.*, that she takes the estate subject to the wood being cut off. Roper on Legacies, vol. 1, p. 500.

"A legacy upon condition is defined to be a bequest whose existence depends upon the happening or not happening of some *uncertain* event, by which it is either to take place or be defeated;" and again, "in cases of wills where the intention can be collected that the bequest should be conditional, that intent will be effectuated by whatever words expressed."

If, therefore, this proviso is construed to be a limitation, the estate taken by Mary J. West is subject to it,

and the nonperformance of the contract cannot operate in favor of the devisee.

If the proviso in item 4 of the will should be construed to be a condition, it is a condition precedent and not a condition subsequent. 1 Roper on Legacies, 501, 502, 513. See also chapter entitled " Legacies upon Condition."

As to conditions subsequent, see Simpson v. Vickers, 14 Ves. Jr. 340, and cases cited; Egerton v. Earl Brownlow, House of Lords Cases, vol. 4, p. 1; Popham v. Bampfield, 1 Vern. Ch. 82; Hayden v. Stoughton, 5 Pick. 531, and cases cited; Gravenor v. Hallum, Amb. 645; Brigham v. Shattuck, 10 Pick 308, 309.

If, again, the proviso should be construed to be a condition, it must be a condition precedent, and the devisee takes the estate subject to the condition, and in no event can she take advantage of the nonperformance of the contract.

C. W. Cullen, for respondent.

The proviso in item 4 of the will did not amount to a reservation of the timber so as to exclude it from passing, as part of the land, but only to subject it to be worked under and in conformity with the contract.

The devise of the testator in said proviso to those whom he designated as his heirs-at-law, was the avails arising from the contract as and to be performed by the Gaults, and conferred upon each legatee only such fruits as were secured by the contemplated performance of the contract, but gave them no right to or in the land or the timber thereon, except only as subjecting it to be cut and worked in executing the contract.

18

That the gift of the testator was upon the express declaration that the timber "should be worked as per contract now existing, and the rising issues therefrom should be paid into my estate." This amounted to a gift of the proceeds of that contract and of those only. Whatever was devised from the working of the timber under that contract, and that only, was to go into his estate, and unless such timber was worked under the contract to which he especially refers, there could be no issues therefrom as devised from such working.

The gift of the testator was of his interest in the contract, and, therefore, only the avails of this contract as worked by the other parties (the Gaults) or the damages which ought to be recovered from the Gaults for the failure to perform the contract, would be issues arising therefrom, and this only was to be paid into his estate and be equally divided among his lawful heirs.

As admitted, and not denied, the Gaults were unable, by reason of insolvency, to perform the contract, and hence there was no rising issues therefrom, which passed under said devise. In all other respects except only as to the right and duty of the Gaults to work the timber (as per contract), then existing, his daughter Mary, as devisee, took the lands in fee-simple and no other person than the one having the right to cut the timber in execution of that contract can claim anything against her. The estate devised at once vested in Mrs. West, and the condition or lien to which it may be likened was subsequent and not precedent. Equity will relieve in cases of a condition precedent, but not subsequent. 6 Pet. (U. S.) 145; 1 Jarman on Wills, top paging, 690; 2 Story's Eq. Jur., paragraphs 1302-1307; 4 Kent's Com. top paging, 125-131; 2 Bl. Com., top paging, 156; 10

Pick., Merrill Adm. in Levy Ext. 507; 1 Fonblanque's Eq., top paging, 211, note C; Aislabic v. Rice, 3 Maddox, 137.

The contract in this case was executed by R. Lambden of the one part, and the Gaults of the second part; the same was not carried out by reason of the insolvency of the Gaults, and they not only refused to execute their part, but were unable to do so from their insolvency. The execution of the contract by the Gaults, one of the parties, became impossible.    In such cases the devisee takes the lands divested of the condition.    4 Kent's Com. 130; 2 Bl. Com. 157; 1 Fonblanque's Eq., note C, 211.

The contract was between and executed by R. Lambden and the Gaults, and by the same a legal liability to execute and perform the provisions thereof was created by and binding on both parties.    A failure by either to comply made him liable in damages for a breach of contract which was cognizable in a court of law and not equity; the fact that the Gaults were insolvent  in no way can change or affect the proper jurisdiction of the parties in this case; in other words, the only remedy in this case is a legal right vested now in these executors of Robert Lambden to proceed in an action of debt on said contract against the Gaults for damages by reason of failure on their part to perform the covenants set forth in said contract to be kept and performed on their part. The remedy in this case is a legal one and not in equity; when there is a legal remedy a court of equity has no jurisdiction.  Suppose Lambden had in his lifetime, on his part, done some act to prevent the Gaults performing their part of said agreement, was not the only remedy

they had to sue him for a breach of the contract on his part? This devise was not made a charge upon the lands, nor can the same be so construed, but was a devise to the heirs of the " rising issues," made and realized from the working of the timber on said lands under said contract; it was a devise of the proceeds to be realized in the future from a contract which afterwards was repudiated and utterly failed by the acts of one of the parties, the Gaults. Here then was a devise of the profits to be realized subsequently from cutting timber on lands devised under a contract which utterly failed, and became null and void. The foregoing position is supported by authorities relative to the construction of wills, and they will show that in such cases, where the title vests, and is subject to a condition subsequent, which ceased by the act of God, utter inconsistency, impossibility to be performed, or by the act of either party, etc., the devisee takes the estate divested of the condition. R. Lambden died in April, 1885; the Gaults repudiated contract or rather became utterly unable to carry out the same some six or eight weeks after Lambden's death; and after a delay until January, 1889, when it was rendered certain that the Gaults would not, and by reason of insolvency could not, perform the contract, and had long before removed the mill from the premises, rendering impossible the performance of the contract on their part, the said devisee took possession of said lands and proceeded to cut timber off with reference to clearing and putting lands in cultivation. This performance of the contract having become impossible on the part of the Gaults, is there any legal or equitable right by which the devisee could have or compel a speci-

fied performance of the same, and does it not come to this — in case of a breach of a contract such as this — the only remedy is by action at law to recover damages for a breach of the same?

WOLCOTT, CHANCELLOR.— The facts in this case are substantially as follows:· On the 20th day of October, A. D. 1883, Samuel H. Gault and Silas Gault, of Broad Creek Hundred, Sussex county, State of Delaware, of the one part, and Robert Lambden, of the other part, made and executed a certain agreement in writing, as follows:

" This agreement made and concluded by and between Samuel H. Gault and Silas Gault of Broad Creek Hundred, Sussex County, and State of Delaware, of the first part, and Robert Lambden of the same place of the second part;

"WITNESSETH, That the said Samuel H. Gault and Silas Gault, for and in consideration of the stipulations hereinafter set forth, Hath agreed to and with the said Robert Lambden, his heirs or assigns, to erect a steam saw mill on land of said Robert Lambden on what is known as Ross Point, lying between the Big and little Melson's Mills, in Broad Creek Hundred and County aforesaid, and said mill to be kept at said location until all the timber large enough is sawed up, the said Gaults are to saw the timber into peach crate patterns at the rate of one hundred thousand annually or more if they chose, they are to cut, haul and saw said timber and to have the one half part of the same after it is sawed into patterns. All lumber sawed not peach box patterns, for

said Lambden, they are to have, for what pine timber under one inch in thickness sixteen cents per hundered feet mill measure. All pine lumber sawed (except peach box patterns) one inch in thickness or over, twenty cents per hundred feet mill measure. All white oak and Hickory sawed to have twenty five cents per hundered feet. They are to saw all lumber in good merchantable order with as little waste as possible. The said Robert Lambden is to haul free of charge the said mill and machinery from its present position to the point where she is to be located on Ross Point, as aforesaid, to furnish also free of charge enough timber out of which said Gaults can saw lumber for the mill-house, said mill-house to be put up at the said Gaults expense. The said Lambden is to furnish the other parties a dwelling house to live in free of rent during the time they let the mill remain on Ross Point and while engaged in working said Lambden's timber. The said Robert Lambden is to furnish the said Gaults two timber carts and his Laura mule to use free of charge during the time said Gaults are sawing his timber at Ross Point.

"Witness the hands and seals of the parties hereto this twentieth day of October, A. D. 1883.

(Signed.)　SAMUEL H. GAULT,　[SEAL.]
(Signed.)　SILAS T. GAULT,　[SEAL.]
(Signed.)　ROBT. LAMBDEN.　[SEAL.]
　　Attest:
(Signed.) THOMAS W. RALPH."

That the said Robert Lambden departed this life on or about the 20th day of April, A. D. 1885, leaving to survive him as his heirs-at-law and next of kin, three chil-

dren, to-wit, the complainants, Thomas S. Lambden and Harvey Lambden, and the defendant Mary J. West, who intermarried with, and is now the wife of, Samuel B. West, the other defendant.

That the said Robert Lambden being seized in fee simple in his lifetime and at the time of his death, of the tract of land hereinafter described, being the same tract mentioned in the said contract above quoted, made and published his last will and testament bearing date the 10th day of April, A. D. 1885, and which was duly proved and allowed on the 29th day of April, A. D. 1885, by the register of wills of said county, and recorded in Will Record Book P, No. 15, page 112. Letters testamentary thereon were duly granted to the said complainant Thomas Lambden and the said defendant Samuel B. West, the executors named in said will.

Items 4 and 15 of said will, being the only parts involved in this controversy, are as follows:

" Item 4th. I give and bequeath unto my daughter Mary J. West, wife of Samuel B. West, to her and to her heirs and assigns, to have and to hold forever, a certain tract of land situated in Broad Creek Hundered Sussex County, the same being all the land south of the public road leading from the Big Mill to the Little Mill, including all the land between the aforesaid Mill streams and containing about one hundered and ninety acres (190), Provided, however, that all the timber on the aforesaid 190 acres shall be worked as per contract now existing, and the rising issues therefrom shall be paid into my estate and be equally divided among my lawful heirs."

"Item 15th. I give and bequeath all the rest, residue and remainder of my personal property not heretofore disposed of unto my three children, viz.: Thomas S. Lambden, Harvey Lambden and Mary J. West, the same to be equally divided among them."

Prior to the death of the said Robert Lambden, the testator, the said Samuel S. Gault and Silas Gault, in pursuance of the said agreement, erected a sawmill on the tract of land in question, and proceeded to carry out the terms of the said agreement during the remainder of the said Robert Lambden's life, and for a few months after his death when, on account of insolvency, they abandoned the work, and utterly failed and refused to complete the execution of the said agreement.

That in the month of January, A. D. 1889, the said Mary J. West, under said item 4 of said will, took possession of the said lands so devised to her, and directed the said Samuel B. West, her husband, to clear up said land with a view to putting the same under cultivation.

That on the 20th day of June, A. D. 1889, the complainants claiming the timber upon said land under item 4 of said will, as heirs-at-law of the said testator, filed a bill setting forth substantially the above-stated facts, and praying for an injunction restraining the said defendants from cutting the said timber; and thereupon a rule was issued to show cause why a preliminary injunction should not issue, returnable the 8th day of July, A. D. 1889, and an order was issued restraining them in the meantime, as prayed for.

On the 8th day of July, A. D. 1889, the defendants executed a bond with J. Gibson Cannon, as surety, conditioned that the said Mary J. West should keep a just

and true account of all the timber that might be cut, converted and sold by her growing on the land devised to her as aforesaid, and pay the proceeds of the sale thereof to the executors of said deceased, provided, that the decree finally establishing the rights of the respective parties shall so direct, and that the said said Mary J. West, her heirs, executors or administrators shall, in all things, perform and abide such decrees or orders as the Chancellor may make, then the said bond to be void; otherwise to be and remain in full force and virtue, whereupon the restraining order was discharged.

On the 30th day of July, A. D. 1890, Mary J. West, one of the defendants, filed an answer, admitting to be true all the facts stated in the bill of complaint, with the additional allegation that Robert J. Lambden in his lifetime, received the proceeds which arose from the said agreement with the said Gaults up to the time of his death, and the proceeds which arose therefrom subsequent to his death passed into the hands of his executors.

The controversy in this case arises between the complainants and the defendant Mary J. West, under the provisional clause in item fourth of the said will, by reason of the abandonment by the Gaults of the contract therein referred to.

It is proper at the threshold of the consideration of this question to eliminate therefrom the fact that the timber growing on the land devised was converted into money by Mary J. West, the devisee of the land, under the sanction of this court, and the same secured by a bond to await the adjudication of the rights of the parties. The conditions which existed at the time of the testator's death must, for the purposes of this case, be regarded as

existing now, as the status of the parties under the will was fixed at the moment of his decease. This court cannot create a condition unauthorized by the will, whether intentional or otherwise, by which a certain result may be attained compatible with either a supposed or real testamentary intent.

It was insisted by the solicitors for the complainants that the contract between the testator and the Gaults operated as an equitable conversion of the timber growing on the land devised to Mary J. West, from the time of its execution.

The determination of this question thus raised depends upon the purport and object of the contract. By that contract, the Gaults covenanted with the testator to erect a sawmill on Ross Point being on the lands devised in the said fourth item of the will to the said Mary J. West, and to keep the same there until all the timber large enough was sawed up, and to saw the said timber into peach-crate patterns at the rate of 100,000 annually, or more if they chose. For this they were to receive one-half, after being sawed into such patterns. All lumber sawed, not being peach-box patterns, they were to saw for Lambden, the testator, at prices specified in the contract.

It is manifest upon the reading of this contract that its effect is nothing more nor less than a simple hiring or employment of the Gaults by Lambden, the testator, to cut and saw the timber in question, to be paid for by him part in money and in part in kind. There is nothing whatever in its language to support the contention that it is a contract for purchase or sale of the timber, or any interest in the land.

It was further contended, on the part of the complainant, that the provision in the said fourth item of the will, by which the testator declared that the timber growing on the land devised to Mary J. West should be worked according to contract (referring to the agreement with the Gaults), and bequeathed the proceeds arising therefrom to his heirs-at-law, was a condition precedent annexed to the gift of the fee in the land.

This contention, however, must also fall from the fact that this provision in the will is in reality neither a condition precedent nor subsequent, as regards the devise of the land to Mary J. West. The vesting of the fee in Mary J. West did not in anywise depend upon the performance or nonperformance of the agreement. It was absolutely free from any contingency whatever. Immediately upon the death of the testator, her right in the land became definitely fixed or established. It is not a condition subsequent, because there is no intimation in the will that her estate in the land should be defeasible upon the happening or not happening of any particular event.

The only condition contained in item fourth of the will relates exclusively to the bequest to the heirs-at-law of the issues arising from the contract in regard to the cutting of the timber. After devising the fee in the land to Mary J. West, the testator provides, " that all the timber on the aforesaid 190 acres shall be worked as per contract now existing and the rising issues therefrom shall be paid into my estate and be equally divided among my lawful heirs."

This language cannot be misunderstood. It is only the issues arising from the contract with the Gaults that

he gives to his heirs-at-law.   He does not give them the
timber, neither does he authorize the executors to sell
the timber and  give them the proceeds of  the sale
thereof; they take no interest whatever in the timber
except in the particular mode designated in item fourth
of the will, and no authority is conferred upon the ex-
ecutors to do any act concerning the timber except to
receive the issues arising from the contract and to dis-
tribute the same among the heirs-at-law.   The simple
language employed by the testator to give to Mary J.
West the fee in the land, invested her with absolute
dominion and control over it and all the timber growing
thereon.   Her authority in respect thereto was limited
only by the provisional clause in item fourth, which
subjected the timber to the operation of the contract
therein referred to.   That agreement gave to the
Gaults only the right to occupy the land for the purpose
of working up the timber in the manner provided for
in the contract.   The right of Mary J. West to enter
the land and use it for her own exclusive purposes was
perfect against all the world except the Gaults.   As we
have seen, the executors had no right to enter, and the
heirs-at-law are in the same position.   It is urged that
the provisional clause in item fourth of the will must
be construed so as to have the effect of an exception of
the timber from the gift to Mary J. West.   Suppose it
is, its operation was made by the testator to depend
upon the will of the Gaults.   I have no doubt that it
was an exception subject to the contingency involved
in the performance of the contract, through which the
exception might be realized by the heirs-at-law of the
testator.

By the insolvency of the Gaults, however, and their refusal to perform the contract mentioned, the only mode thus expressly provided by the testator by which his heirs were to receive any benefit under item fourth, has been rendered totally ineffective.　The heirs-at-law cannot now, therefore, take anything under the fourth item of the will, unless it be in some way contrary to the testamentary method.　This court has no power to provide such a way.　It is certain that it has no power to make a new will for the testator, and it is equally certain that it has no power to substitute a new provision in a will. For the power to do the latter would argue the existence of the power to do the former.

Suppose that the testator had intended that his heirs-at-law should have the benefits of the conversion of the timber into personalty, in the way prescribed in the will, or of that which was equivalent thereto, he should not have restricted them to a particular mode of receiving such benefits.　Having made the gift dependent upon the performance of the contract, must not they look to that as the only source whence such advantage must be derived?　He, therefore, made the performance of the contract a condition upon which his heirs-at-law should enjoy the benefit of this peculiar bequest.

In the construction of this clause of the will, it is immaterial what the conjectural intention of the testator may have been.　Whether or not he intended that his heirs-at-law should have the profits of the timber independently of any possible failure or abandonment of the contract cannot prevail against the unambiguous language which he used, not only to express his intention,

but to carry it into effect.   If he did so intend, it was simply a case of *voluit sed non dixit.*

I am, therefore, of the opinion that Mary J. West, after the abandonment of the contract by the Gaults, took the land devised to her in item fourth of the will, and all the timber growing thereon, discharged from any claim thereto on the part of the heirs-at-law of the testator or of his executors.