CYNTHIA P. GETCHELL,

*vs.*

PETER A. RUST, CHARLES H. RUST, THOMAS B. RUST, NEHI-
MIAH W. PRETTYMAN, LOUISA F. ROBINSON AND DAVID
ROBINSON, JANE THOROUGHGOOD AND JOHN E. THOR-
OUGHGOOD AND HERBERT MEGEE.

*Sussex, March T.* 1899.

A testator bequeathed to his wife a house and lot "also $300 in good
and lawful money of the United States of America," and certain
other personal chattels, "provided she stands to or accepts my
will. If not nothing." To each of his sons was devised a tract of
land on which they resided respectively, and to his grandson,
the family homestead. To one son and his daughters were
given pecuniary legacies. The conclusion of the will immediately
preceding the *in testimonium* clause, was, "And I do hereby
make and ordain T. and D. executors of this my last will and
testament, *all of said legacies to be paid out of my estate;*" the
word "executors" being written across the line after the names

were written, and the words in italics interlined, in the original will. There was no residuary clause. Upon a bill to charge the legacy to the widow upon the land; *held*, that the intention of the testator to charge the land with the payment of the wife's legacy did not appear from the will either by express words or by fair and reasonable implication.

Inasmuch as the personal estate is the natural and primary fund for the payment of debts and legacies, the law conclusively presumes that a legacy is to be paid only out of the personalty, and if that be insufficient, the legacy is lost *pro tanto*, unless a contrary intention appears upon the face of the will either by express words or by fair and reasonable implication.

Upon the proposal to charge the real estate with the payment of a pecuniary legacy, all the presumptions are against it and must be met and overcome; the burden rests upon the legatee seeking such relief to establish clearly his case and to find evidence to support it within the four corners of the will, considering all of the circumstances under which it was made.

The existence of a residuary clause is considered in this Court to be demonstrative evidence of an intention to charge a legacy upon the land.

BILL BY LEGATEE TO ESTABLISH A CHARGE ON LANDS.—The complainant was the widow of Thomas Rust, who had died in the month of September, 1890, seized and possessed of certain lands and tenements in Sussex County, and who during his lifetime had duly made and published his last will and testament, which after his death was duly proved and allowed.

In and by his will the tesator bequeathed to his wife, the complainant, a house and lot, "also $300 in good and lawful money of the United States of America" and certain other personal chattels, "provided she stands to or accepts my will. If not, nothing."

By the successive items of his will the testator devised to his sons, Peter A. Rust, Charles H. Rust and Thomas F. Rust, severally, tracts of land in fee simple; to his daughters, Louisa F., wife of David Robinson and Jane, wife of Edward Thoroughgood, jointly in fee simple, a tract of land to be equally divided between them; and to his grandson,

Herbert Megee, a certain other tract of land, also in fee simple.

To his son Thomas and his daughters Louisa F. Robinson and Jane Thoroughgood, the testator bequeathed in addition certain sums of money in his will specified.

The conclusion of the will, immediately preceding the *in testimonium* clause, was:

"And I do hereby make and ordain John E. Thoroughgood and R. J. Davidson executors of this my last will and testament, all of such legacies to be paid out of my estate."

The bill further alleged the subsequent marriage of the complainant with George W. Getchell.

The executors named in the will were duly appointed and qualified before the Register of Wills, and the personal chattels specifically bequeathed to the complainant were delivered to her, and after the executors had passed their final testamentary account, the complainant received from them the sum of $99.63, that being the proportionate amount of the balance in the hands of the executors upon their final account which was applicable to the complainant's legacy of $300. The bill claimed that there was due and owing to the complainant upon said legacy a balance of $291.87, with interest thereon from September 20, 1895, which, it was alleged, was payable out of the real estate of the testator.

It was also alleged that the lands and premises devised to Thomas B. Rust had, under execution process, been sold by the Sheriff to the respondent, Nehemiah W. Prettyman. The complainant averred that she was utterly remediless at law, but in equity was entitled to have full payment and settlement of the balance of her legacy from the real estate devised by her husband, less the sum which the complainant would be obliged in equity to contribute thereto as one of the devisees of the real estate under his will.

The prayers were for answer; for an accounting of what was due on the legacy to the complainant; for a sale of so much of the real estate as might be necessary to pay the balance due; for further relief; and for subpoena.

The bill was filed March 11, 1896, and subsequently all

the respondents filed a joint and several answer admitting all the facts as set forth in the bill. They denied that the complainant was entitled to have payment of the balance of her legacy out of the real estate, inasmuch as the legacy was not a lien or charge upon said real estate, but was paid in full by apportionment of the personal assets, by which all liability of the estate for said legacy was discharged; and the respondents aver that there were no express words in the will making any of the legacies a charge upon the real estate.

At the March Term, 1897, the cause was argued on bill and answer. .

*R. C. White*, for complainant.

1. In the construction of testamentary dispositions of property, the intention and meaning of the testator, as far as allowed by law, shall prevail. *Cooch's Exr. vs. Cooch's Admr. et al.*, 5 *Houst.* 340, 570.

2. A testator may charge real estate with legacies.

3. The word "estate" when used by a testator, shall be construed to mean both real and personal property, unless limited to the one or the other by other language in the will which clearly shows the intention to use the word in such limited sense. *Bray vs. Lamb*, 2 *Dev. Eq.* 373; *Biddle vs. Carraway*, 6 *Jones Eq.* 95; 2 *Jarm. Wills*, 583; *Bouvier's Law Dictionary, Tit.* "*Estate;*" *Worth vs. Worth*, 95 *N. C.* 239, 243; *City of Boston vs. Dedham*, 4 *Metc.* 178.

4. The language "all the above legacies to be paid out of my estate" as used by Thomas Rust, the testator, charges his real estate with the legacies bequeathed by him, because there is no other language in the will from which there can be inferred an intention to limit the word "estate" to personal property. *Worth vs. Worth, supra; Bray vs. Lamb, supra; Coxe vs. Corkendall*, 2 *Beas. Ch.* (13 *N. J. Eq.*) 138; *Biddle vs. Carraway, supra*; 2 *Jarm. Wills*, 532.

*Charles W. Cullen*, for the respondents.

To charge lands devised with payment of legacies, requires express words or necessary implication. *Myers vs. Eddy*, 47 *Barb.* 263; *Budd vs. Williams*, 26 *Md.* 265; *Knightly*

*vs. Knightly,* 2 *Ves. Jr.* 328; *Reynolds vs. Reynolds,* 16 *N. Y.* 257, 259; *Gilder vs. Gilder, et al.,* 1 *Del. Ch.* 331; *Lupton vs. Lupton,* 2 *Johns. Ch.* 614, 628; *Stevens vs. Gregg,* 10 *Gill & J.* 143; *Luckett vs. White,* 10 *Gill & J.* 480.

The intent to charge must clearly appear and be unequivocal. *Cooch vs. Cooch,* 5 *Houst* 540, 563; *White Exr. vs. Kauffman,* 66 *Md.* 89, 5 *Atl.* 865; *Harris vs. Fly,* 7 *Paige,* 421, 425; *Bevan et al. vs. Cooper, et al.,* 72 *N. Y.* 318; 1 *Roper on Legacies,* 681, 671, 682; *Morris vs. Sickley,* 133 *N. Y.* 456.

When a testator directs the payment of legacies "out of his estate," and the personalty is not sufficient, devised realty is not chargeable with their payment. *White, Ex'r. vs. Kauffman, supra; Worth vs. Worth,* 95 *N. C.* 239; *Maybury vs. Grady,* 67 *Ala.* 147.

That "as plain words are necessary to disinherit an heir, words equally plain are requisite to charge the estate of an heir, which is a *disherison pro tanto.*" *Davis vs. Gardner,* 2 *P. Wms.* 187.

"There is no reason why a specific devise should not take effect, as much as a pecuniary one." *Sir R. P. Arden in Shallcross vs. Finden,* 3 *Ves.* 738, 739; *Hawkins on Wills,* 296–7.

A mere direction to pay debts and legacies does not create a charge on real estate. *Lupton vs. Lupton,* 2 *Johns. Ch,* 614, 624.

The intent of the testator, Thomas Rust, that he did not mean that the said legacy should be a charge upon his real estate devised, is manifest inasmuch as the complainant, one of the legatees in said will, is also a specific devisee, which would result, if the legacy is a charge on the real estate, in selling her own land, devised to her to pay a part of the legacy bequeathed her. *Case vs. Case, Kirby* 284.

The intent is further manifest, in that the accounts of the testator's executors, as passed before the Register of Wills, show a considerable sum,, that came into their hands, arising from his personalty.

There does not appear to be any residuary clause in testator's will from which, even by implication, the words "out

of my estate" could be construed, as making the legacies a charge upon the real estate devised.

The disposition of the testator's property is in no sense such a blending of both the personal and real property, as would justify this Court to make a decree charging the real estate devised with the payment of said legacy.

THE CHANCELLOR:—

This is a bill filed by Cynthia P. Getchell, the complainant, formerly the wife of Thomas Rust, deceased, for the purpose of having a pecuniary legacy, which was bequeathed to her by him, declared a charge upon the lands devised in his last will and testament.

The prayers of the bill in addition to the usual ones for subpoena, answer and other relief, were as follows:

"Second. That an account may be taken of what is due for principal and interest on the said legacy less the sum which this complainant in equity will be obliged to contribute thereto as one of the devisees of real estate under the said last will and testament of said deceased.

"Third. That the Chancellor may decree the sale of so much of said real estate as will be necessary to pay the balance due upon said legacy."

The land is not expressly charged with the payment of legacies and the contention of complainant's counsel that the pecuniary legacy to her should be considered a charge upon the real estate rests solely upon a single phrase in the will, to wit: "all of said legacies to be paid out of my estate," nothing else in the will being suggested in the argument as aiding the construction which is sought to be put upon the words quoted.

There is no case in the reported decisions of this State decisive of the precise point raised in this cause, but the general rule, of construction, which must control its decision, has been nowhere stated with more force and emphasis than in this Court.

In *Miller, Ex'r. of Cooch vs. Cooch's Admr.*, 5 *Del. Ch.* 161, 173, Chancellor Saulsbury says, "It is a general rule—a

settled rule—that the personal estate is the primary fund for the payment of funeral and testamentary expenses, debts, and legacies; and this general rule must in every case be applied unless there appears from the whole or some part of the will that a testator intends that his real estate or its proceeds, either of rents or moneys raised upon the faith of it or by sale, or in some other manner, shall be charged with their payment, and unless it further appears, in like manner, that he does not intend that his personal estate shall be charged with their payment. It must satisfactorily appear that he not only intends to charge his real estate or its proceeds, but that he intends to discharge his personal estate from their payment. It was formerly held that this intention must appear from express words in the will. This doctrine is nowhere maintained at the present day. Had it been strictly adhered to and not departed from, much litigation would have been saved, and judicial decisions upon this subject would have been much more uniform and consistent. Courts have used different forms of expression in determining the ·rule to be applied in the solution of the question of primary liability between the personal and real estate. Some judges have said that the intention to make the real estate the primary fund must appear by implication plain; others, by intention clear; others, by irresistible conclusion; others, that the mind of the judge must be convinced that he is deciding according to what the testator intended; others, that the evidence of intention to charge the real estate and discharge the personalty must be sufficient to satisfy the judicial mind.''

It is true that in the case cited, there was involved not only the question whether the real estate was to be charged, but also whether it was the intention of the testator that the personal estate should be exonerated from the payment of debts or legacies. But the principle is precisely the same, and the rule requiring that the intention of the testator shall be clearly made out, is the same, whether the question in the particular case is as to payment out of the real estate and exoneration of the personal estate, or merely, as in the present

case, payment out of the real estate of a balance which the personal estate proved insufficient to meet.

The decision of Chancellor Saulsbury, from which I have quoted, was unanimously affirmed by the Court of Errors and Appeals in the same case on appeal, usually cited *Cooch's Exr. vs. Cooch's Admr.* 5 *Houst.* 540, 563, where Chief Justice Comegys, in delivering the opinion of the Court, refers to the rules that the personal estate is the primary fund for the payment of debts and legacies, and that real estate is not liable for either, unless the testator has unequivocally so declared in his will, as "well established and reasonable rules which serve as a sure guide to Courts in the decision of such questions as that presented by the record in this case, and which are by no means new, but are so old as to have become venerable land marks of equity decisions in cases of this nature under wills." He adds that they "have so long prevailed as to be entitled to the appellation of maxims."

I will not consider the other provisions of the will before taking up the consideration of the effect of the language above quoted from it, and relied upon by the complainant to constitute her legacy a charge upon the land, except to refer to the fact that there is no residuary clause, and in that connection to cite two cases decided in this Court in which the existence of a residuary clause was considered to be demonstrative evidence of an intention to charge a legacy upon the land. *Hilford, Adm'r., vs. Way,* 1 *Del. Ch.* 342; *Rambo, Ex'r., vs. Rumer,* 4 *Del. Ch.* 9.

In several of the cases cited in the argument, language similar to that relied upon by the complainant to sustain her contention has been held sufficient to raise an inference of an intention, apparent upon the face of the will to charge the real estate. A careful examination of those cases, however, discloses the fact that in none of them is there to be found in the will anything either tending to raise a contrary presumption, or to indicate that the word "estate" was used by the testator in a sense other than its broadest meaning, which would, of course, include both realty and personalty.

In *Cox vs. Corkendall*, 13 *N. J. Eq.* 38, a general direction that the legacies were to be paid out of the testator's "estate" was held sufficient to create a charge, but the intention to create one appeared also from the fact that the testator gave all his "lands and personal property," after the payment of his debts, to his sons, and appointed them as executors. The legatees received nothing but the legacies, not land. In that case, therefore, the decision that there was a charge, did not rest solely upon the direction to pay "out of my estate," although from a cursory reading of the opinion it might so appear. It is to be noted too, that the testator in that case used apt expressions to distinguish realty and personalty, and this would strengthen the inference that he used the word "estate" to indicate both. The general devises in this case may also well be considered a residuary clause, which as I have shown has been held in this Court to be of itself sufficient to raise the presumption of an intention to charge lands.

In *Bray vs. Lamb*, 2 *Dev. Eq.* 372, 25 *Amer. Dec.* 718, a bequest of five hundred dollars was "to be raised and paid out of my estate." Chief Justice Ruffin laid stress upon these words, which he said "included everything, and showed an intention that this legacy should be raised at all events." He continued, "the other provisions of the will strengthen this construction. It is true there is no residuary clause, nor are there any words annexed to the devise of the lands expressing in that part of the will that the devise was subject to this legacy. But the testator sets out with the declaration that he means to dispose of all his worldly goods and the personalty turns out to be very inconsiderable, and, except this legacy, everything given is to the wife for life, whom he appoints executrix, with remainder over to the same persons in each disposition, and upon the same contingency. It must be taken, I think, as the executrix whose duty it is to pay the legacy, is to have the whole profits of the estate during life, that the testator could not intend that this legacy should be allowed by her to fail, in case the undisposed resi-

due proved deficient, but that the executrix should make it good out of other parts of the estate."

In *Riddle vs. Caraway*, 6 *Jones Eq.* 95, which was cited as enforcing *Bray vs. Lamb.*, a majority of the Court did express the opinion that a direction that a legacy should be paid "out of my estate" would create a charge, but that seems to be *obiter dictum*, as the question involved was not whether land should be charged, but whether pecuniary legacies were a charge upon the specific ones, and whether they were a charge upon lands specifically devised was not decided, although the Court indicated an opinion that because the payment "out of my estate" was to be made "by the executor," it could not have been intended to charge the land.

The case of *Worth vs. Worth*, 95 *N. C.* 239, decided in 1886, was cited by counsel on both sides. There the testator made a bequest to his wife of eighteen hundred dollars "to be paid to her in cash or in cash bonds, at her option, out of mv estate." The Court,while admitting the force, accorded to the word "estate" in the prior decisions of the State above referred to, held that the will was to be examined in view of surrounding circumstances, in order to ascertain in what sense the word was used by the testator; that it was not of itself conclusive; and that "if by the use of other annexed terms, or from other parts of the instrument, it can be seen or fairly inferred that the term was used in a more restricted sense and was intended to designate only the personal property of the deceased, such must be its confined effect."

Applying this principle, the Court found that the word "estate" was used three times as embracing personal property alone, and accepted that construction as applying to the clause which it was sought to make the foundation of a charge upon lands.

It appears from this consideration of the cases cited and relied upon by counsel for the complainant, that a direction that a bequest of money shall be paid out of the testator's "estate" will not of itself create a charge on lands; that the phrase is to be taken in connection with the remainder of the will and considered with reference to the construction which

upon the whole appears to carry out the intention of the testator.

The two following cases were cited by counsel for the respondent and are both interesting and instructive. In the one, *White, Exr. vs. Kauffman*, 66 *Md.* 89, the testator directed his executor to "satisfy and pay all my just debts and funeral expenses out of my estate." He also bequeathed to a nephew two hundred dollars and directed his executor to pay the same to him "as soon as convenient after my decease out of my estate." There was also a residuary devise and bequest.

After noting the fact that the same language was used as to debts as to the legacy, the Court draws attention to a difference between the law of England and that of Maryland, most important to bear in mind in applying this class of English cases, and inasmuch as the same difference exists between the law of Delaware and that of England, the language of the Maryland Court may be quoted.

"In considering the cases which have been decided in England and in the States of this country which have followed the English authorities, we must bear in mind an important difference between the law of this State and the common law, on the subject of the payment of debts due by decedents. By the common law, the real estate of a deceased person was not liable for his simple contract debts; nor even for his specialty obligations, except where the heir was expressly bound. Hence, there was a natural and laudable desire on the part of the Judges to construe wills so as to bind the lands of the testator for the payment of his debts, wherever such construction could possibly be made. They were astute in giving a meaning to general and ambiguous expressions, in order to carry into effect the just and rational purpose of paying the debts of a decedent out of his property. But in Maryland such construction would not be justifiable. The Act of 1785, chapter 72, makes the real estate of a deceased liable for the payment of all his debts on failure of the personalty; and it makes no difference whether he leaves a will or not, or what provisions it may contain. We have the author-

ity of decided cases in this Court for holding that words in a will declaring that a testator's debts are to be paid before devises and bequests, must be regarded as immaterial and inoperative, and as not furnishing any evidence of an intention to charge the real estate; inasmuch as they simply provide what the law has determined shall be done, with or without such a clause in the will. *Cornish vs. Wilson,* 6 *Gill* 315; *Piper vs. Hamilton's Executors,* 26 *Md.* 220. This statute may also sufficiently explain the reason why our law on the subject of charging legacies on real estate, does not adopt the decisions in England and some of the other States of the Union. It being held that the same words which would charge debts would also charge legacies, a radical difference in construction in one case would cause a corresponding difference in the other."

The Court considered that upon the whole will the legacy was not charged upon the lands, and reversed the decree of the Court below, which had directed the sale of the land for the payment of legacies. Much stress was laid by the Court upon the two facts that the direction was that the executor should pay the legacies out of the estate, and that the residue was devised unconditionally and with no direction or request to pay legacies.

The other case to which I refer is that of *Mayberry vs. Greeley,* 67 *Ala.* 147, and to that only as one of the many authorities to the effect that a direction to pay or expend money out of the "estate" or "my estate" does not of itself imply a charge on the land for the purpose indicated.

This case arose out of a very complicated will, and the entire will was reviewed in order to ascertain from all its provisions, taken together, the meaning to be given to the term "estate" in the particular connection in which it was used.

Having thus ascertained by a careful review of all the cases cited in the argument in support of the contention that the use of the word "estate" is of itself and unaided sufficient to charge the land, it becomes necessary to examine the

will itself and ascertain, if possible, what it discloses respecting the intention of the testator.

The canons of construction require that the Court shall assume that the testator had a deliberate intention upon the point in question, although not infrequently when obliged to construe the language of a will Courts may think, what that most vigorous and plain-speaking judge, Mr. Justice Gibson, once said, "It is probable the matter never was the subject of his thoughts and we are compelled to look for an intention where none in fact exists." *Shaw vs. Cameron*, 11 *Serg & R*. 252.

I have read the will of Mr. Rust with scrupulous care, having even examined the original which was admitted to probate, and I am unable to find any such evidence of intention as would justify a construction which would make the pecuniary legacy to the complainant a charge upon the real estate. In the original will the direction for legacies "to be paid out of my estate" is appended to the appointment of executors without any punctuation mark to separate the clause, which was interlined evidently after the writing of the will. The entire paragraph reads thus:

"And I do hereby make and ordain John E. Thoroughgood and Robert J. Davis executors of this my last will and testament *all of said legacies to be paid out of my estate*." The word "executors" is inserted across the line after the names had been written, and the words in italics were interlined.

As the testator is supposed to have an intention with respect to every line and act relating to the will, it seems that some weight should be given to the presumption that by selecting this place for the interlineation, and thus connecting his direction to pay with his appointment of executors, he indicated his "intention" that such payment means a discharge of the legacy by the executors, and, therefore, of necessity, from the "estate," which would come into their hands and be under their control as executors.

It must also be remembered that, as is so well said by the Maryland Court of Appeals in *White, Exr., vs. Kauffman*, *supra*, "if a testator gives a legacy, the law conclusively pre-

sumes that it is to be paid only out of the personalty, and if that is insufficient, the legacy is lost; unless a contrary intention is shown on the face of the will. If he wishes it to be paid out of the realty, he must so state either by express words or by fair and reasonable implication."

This is a correct statement of the settled law. Upon the proposal to charge the real estate with the payment of a pecuniary legacy, all the presumptions are against it and must be met and overcome; the burden rests upon the legatee seeking such relief to establish clearly his case and to find evidence to support it within the four corners of the will, considering all of the circumstances under which it was made.

Having already noted the absence of a residuary clause and suggested that the manner of interlineation of the direction as to the payment of the legacies "out of my estate," upon which the complainant relies, should enter into the consiedration of what was the testator's intent, it only remains for me to examine the will and all its provisions as a whole, in order to determine the question at issue. And in this connection, with reference to the sale by the Sheriff of the lands devised to Thomas P. Rust,· which is alleged in the bill as a ground for relief, it may be well to remark that it is elementary law that the status of the parties under the will is fixed at the moment of the testator's decease. *Lambden vs. West,* 7 *Del. Ch.* 282.

The whole scheme of the instrument is inconsistent with the theory that there was an intention to charge the lands with the payment of the pecuniary legacy to the complainant.

To the wife is given a devise of real estate and a legacy of money and chattels; to each of the three sons there is a devise of land "where he now lives-" to each of his daughters, land is devised and money bequeathed; to one of his grandsons he devises "all· the land where I now reside, ** * being the same land that was devised to me by my father by will;" to four other grandchildren he bequeathed fifty dollars each.

In none of the devises of lands is there any suggestion that they were intended to be subject to the payment of leg-

acies, although it would seem to have been natural and probable that if such had been the intent of the testator, or if such an idea had suggested itself to his mind, he would have mentioned in connection with the devises of lands to each of his sons that it was subject to the payment of a proportionate share of the legacy to his wife. The whole scheme of the will seems to be clear.

To each son the testator gives his own home, the place where he was residing during the lifetime of the testator. To a grandson he devises the homestead where he has lived and where his father had lived before him. To his wife and daughters he gave in each case land and money and to the other grandchildren legacies of money.

If one of the pecuniary legacies is to be considered as charged, all must be, and this would not be consistent with theidea which manifestly underlies the whole will.

Each legacy if charged, would have to be paid in part by the devisee of the land charged and it would require very plain language to justify the assumption that such was in the mind of the testator.

Such a construction of his will would require the complainant, as a devisee, to contribute to the payment of her own legacy, as is admitted in the bill, where in the sixth paragraph the complainant states that she is entitled to have payment out of the real estate of the balance of her legacy "less the sum which the complainant will be obliged in equity to contribute thereto as one of the devisees of real estate under the said last will and testament of said deceased." Manifestly it would require plainer language than that relied upon by complainant to support this construction of Mr. Rust's will.

In view of all the authorities which have been reviewed, this examination of the will leads me to the conclusion that the intention of the testator to charge the land with the payment of the legacy to the complainant does not appear from the will either by express words or by fair and reasonable implication, and that, therefore, the bill must be dismissed.

Let a decree be entered accordingly.