# CASES IN CHANCERY.

## DELAWARE.

ANDREW RAMBO, Executor of the last Will and Testament of HENRY RUMER, deceased.

*vs.*

HENRY P. RUMER, MARY FERGUSON, LEWIS HANNA and SUSANNA, his wife, JOHN C. JOHNSTON and ELIZABETH, his wife, WILLIAM LITTLE and MARY, his wife, JAMES LITTLE and MARGARET I., his wife, JAMES STEWART and HESTER, his wife, DAVID EASTBURN and ELIZABETH, his wife, MARY RAMBO and GEORGE B. RUMER.

*New Castle, Feb. T. 1866.* *

A sale of land to pay the legacies charged upon it, the personal estate being inadequate, cannot be ordered by the Court of Chancery upon a bill filed by the Executor, unless all the devisees of the land are parties and submit themselves to the decree of the Court.

Where the entire estate was insufficient to pay all the legacies, two of them which were specifically charged upon land, were required to abate ratably with the others payable out of the estate generally, it being considered from the whole will that it was the intention of the testator that the legatees should be treated alike,

---

*This case and the thirteen following ones, are reported out of their chronological order, because with a few other subsequent cases, generally upon points of practice, they have been brought to the attention of the reporter since the publication of the preceding volume.

2—DEL. CH. IV.

The rule that demonstrative legacies, or such as are payable out of a specific fund, are preferred, as to that fund, in case of a deficiency of assets to pay all the legacies, is a rule of intention merely.

The wife of an executor, being also a devisee of lands charged with the payment of legacies, permitted to be joined, as a party defendant, in a bill filed by her husband as executor, for a decree for the sale of land to pay the legacies.

BILL IN EQUITY —The facts alleged by the bill and admitted by the answer were as follows:

Henry Rumer died January 29, 1865, having made his will, dated the 22d of the same month, and the same after his death was duly proved. In it he devised in these words ;—" And as to my worldly estate, and all the " property, real, personal and mixed of which I shall " die seized and possessed, or to which I shall be entitled "at the time of my decease, I devise, bequeath and " dispose of in the manner following, to wit :

" First, my will is, that all my just debts and funeral " expenses shall, by my executor hereinafter-named, be " paid out of my estate as soon after my decease as shall " by him be found convenient."

Then followed sundry legacies, to Henry P. Rumer, and to Mary Ferguson, Susanna Hanna, and Elizabeth Eastburn, each $50 ; to Mary and Margaret Little, each $100 ; to Andrew Rambo, for his wife Mary Rambo, and George B. Rumer, each $500. Each of these was preceded by the words, "I devise and bequeath," &c.

Then followed, "I devise and bequeath to my two " daughters, Hester Stewart and Elizabeth M. Eastburn, " the interest of one hundred dollars each, the principal " to remain secured in real estate, and the interest paid to " them during their lifetime by my executor, and at their " decease, the principal to be divided among their children, " share and share alike."

Also—"As to the balance of my estate, if there be "any, I give and bequeath to Mary Rambo and George " B. Rumer."

The complainant, being the executor named in the will, received letters testamentary and the personal estate, amounting to $140.40, was insufficient and he had no funds applicable to the debts outstanding.

The testator had died seized of about twenty-eight acres of land with a small house thereon in Mill Creek Hundred.

The bill concluded, that the complainant was advised that he ought to submit himself to the guidance and instruction of the Court, and prayed that the legacies might be decreed to be a charge on the land and that it might be sold by the complainant and the proceeds duly applied by him, first, to the payment of the balance of the debts, then to the legacies.

*T. F. Bayard*, for the complainant.

As to what language will suffice to charge real estate with legacies, see 2 *Jarman on Wills*, 526, (*marginal* 512) ; *Aubrey vs. Middleton*, 4 *Vin.* 460 ; *Trott vs. Vernon*, 1 *Vern.* 708 ; *Bench vs. Biles*, 4 *Madd.* 187 ; *Cole vs. Turner*, 4 *Russ.* 376 ; *Mirehouse vs. Scaife*, 2 *Myl & C.* 695.

The same language which would suffice to charge real estate with debts would onerate it with legacies, 2 *Jarm. on Wills*, 531 and cases cited.

In the present case, it will be observed, there is an enumeration, in the first place, of the entire estate of the Testator,—"as to *all* my *estate*, real, personal and mixed."

Then follow the general legacies ; then a gift of " *the balance, if there be any*," which language is more significant

of his intention to charge " *all* his estate" with the preceding legacies, than any of the cases cited in the text of Jarman.

The next question is, as to the character of the two legacies of $100 each, the principal to remain secured upon the real estate during the lifetime of the two legatees, with remainder to their children.

If *all* the legacies are charged upon the land, the land must be converted into a common fund for their payment ; and if the fund is insufficient for their full payment, there must be an abatement upon all *pro tanto.*

The only doubt here is, whether these two legacies, so especially charged "to remain secured upon the land," can be regarded as *demonstrative* legacies, as having had the real estate pointed out as the particular source whence they were to be paid. In 2 *Leading Cases in Equity, p.* 479, *et seq.*, there will be found cases collected discriminating between the different kinds of legacies.

Henry Rumer died indebted beyond the amount of his personal estate, and the bill and answer disclose debts which can only be paid by the sale of the realty. He must "be *just* before he can be *generous ;*" and of course, these debts must be paid, and to do so the land must be sold. When this has been done and the debts paid, the unadministered balance will be applicable to these legacies ; and it seems to me *pro rata* only, because if a legacy be sufficiently charged upon the land, no *additional words* can have further effect ; and although in this case, the *entire* estate was charged with the general legacies, and the two annuities (as we may call them) were expressly limited to the real estate, yet I do not think this would give any demonstrative character to them over the others, so as to save them from abatement in case it is found necessary. I conclude, therefore, that the real estate must be converted into a fund first to pay the debts, and after that, to pay all legacies *pro rata* as far as the fund will go.

*Gray*, for the defendants.*

THE CHANCELLOR :—

The object of this bill is to obtain a decree declaring certain legacies bequeathed by the will of Henry Rumer, deceased, to be charged on his real estate, also directing a sale by the executor of the real estate, the proceeds to be applied first to the payment of the debts of the testator, (he having left no personal estate,) and the balance to be applied to the legacies, *pro rata*, if insufficient to pay the whole, the decree also to determine whether, if the proceeds of the real estate are sufficient to pay the whole of the legacies, the two legacies to the testator's daughters, Hester and Elizabeth, being expressly directed to be paid out of the real estate, are to abate with the rest.

I feel no doubt upon the authorities cited by Mr. Bayard, that the legacies are all charged on the real estate. The effect of the devise of " all the balance of my estate " is to make the whole estate, real and personal, an entire fund for all the purposes of the will, debts and legacies, until the payment of which the residuary devisees take nothing. There being no specific devise of real estate, the terms "all the balance" can have no application but to what remains after paying the debts and legacies. And I am of opinion that the legacies to Hester and Elizabeth should abate with the rest. I can find no technical rule which controls this latter question, but, looking at the will altogether, it does not impress me that the testator intended any preference, in this respect, of these two children against the others and his grandchildren. The direction that these two legacies should rest upon the land during the lives of the respective legatees is sufficiently accounted for by the

*There was no argument *contra*, the facts being all admitted, as charged, and no objection made by any party to the relief sought, the only questions considered by the Court being what relief could be given and as to the power of this Court in the premises.

testator's desire to secure the principal during the lives of these two married daughters, for which a charge on the land suggested itself as a ready mode ; and it does *not necessarily* imply a preference in favor of the daughters as to the amount of the legacies contrary to the proportion which he had fixed between these and the rest by the sums bequeathed to each. The just rule that "equality is equity," under which legacies abate in equal proportion, should be withheld only when there is an *express direction* or *necessary implication* to the contrary.

I have said there is no *technical rule* controlling the question whether these two legacies shall abate with the rest in applying the proceeds of the land. I have observed the rule that *demonstrative* legacies, or legacies payable out of a specific fund, are preferred as to that fund in case of a deficiency of other assets to pay all the legacies. 1 *Roper on Leg.* (192). But this is upon the presumed *intention* of the testator to give such a preference, and this, like all questions of intention, depends on the provisions of the particular gift. *Generally*, a demonstrative legacy is so charged upon the fund as to be conclusive that a preference is intended. A gift of a sum of money, to be *presently* paid out of a designated personal fund, is the usual instance of a demonstrative legacy ; and this necessarily imports that the legacy is to be paid out of that fund before anything else is. But under Rumer's will the whole estate, land included, is made one entire fund for the payment of *all the legacies alike ;* and the two bequeathed to Hester and Elizabeth are given in express connection with the land, not in order to insure the *full* payment of *them more than of others*, but only to provide an investment of the capital during the lives of the legatees without setting aside funds out of his personal estate. It is evident that the testator over-estimated his estate and did not contemplate any deficiency.

On another subject I have felt great difficulty, and

after much study, it still remains.    The bill prays an order authorizing the complainant, as executor, to sell the land for the purpose of raising the legacies charged upon it. Can the Court give the executor this authority ?

Of course this Court could not order a sale *for the purpose of* paying the *debts* ;  there being for this a provision, made by statute, in another jurisdiction, the Orphan's Court, which too is exclusive.    Nor do I understand that the bill has *for its object* the payment of the debts, but rather to obtain instruction as to whether the legacies are charged on the land, and if so, an order to raise them by a sale of it.    The payment of the debts is treated as a mere consequence of the conversion of the lands into money in the executor's hands.

The subject it is true is one of equitable jurisdiction. This Court can decree the legacies to be a charge on the land and order its sale for their payment, if the devisees do not pay them.  But this cannot be done *at the instance of the executor and through him as a part of his administration of the estate.*  His duties and powers as executor are limited to the administration of the *personal* estate, unless extended by the will to real estate.   When he has applied the personal assets to the legacies, his whole duty as to *them* is done.   He has no power as executor to sell the land to make up a deficiency of personal assets for payment of the legacies, even though these are charged upon it.   Nor can the Court, by an order, give him such power.   It can be only derived by the will.   The Court, in a case of doubtful construction, will on an executor's bill, construe the will, and if the power is found to be there given, will so decree, and perhaps will order a sale ; but the order to sell would be only in execution of the authority given by the will.

A charge of legacies on land does not *impliedly* carry to the executor the power to raise them by sale of it.

There is no ground of necessity out of which such a power must be implied. The charge creates a right *in the legatee* which he can readily enforce in his own name, by a direct proceeding in equity, without the intervention of the executor.

No power of sale then results to the executor from his office; none is given by this will; and I see not how an order of the Court, of its own force, can confer any. The Court can, upon a bill by a legatee, decree payment by the devisee, and *in execution of this decree*, order a sale upon the default of the devisee to pay; but this is different from giving the executor, as such, authority to sell and apply the proceeds as in the course of administering the estate. This subject is no where directly treated on the books and I can cite no authority for the view presented, further than to say that I find no instance of a bill filed by the executor to raise legacies out of real estate, authority not being given by the will; and no instance, indeed, in which legacies have been raised out of land, except upon a bill filled by the legatee against the owner of the land. This seems to be the uniform course where the personal assets are insufficient. In such cases, the executor is made "or should be" a party defendant, because he represents the personal estate which is first applicable; and the decree must establish its insufficiency to pay all the legacies    This is all the connection he has with the proceeding.

If all the devisees of the land were parties, and submitted themselves to the decree of the Court they would be bound by it, and could not impeach an order of sale, nor the title under it ; and so the title would be good by estoppel, even if under an order improperly made. I have looked to see whether, in this way, a sale made as prayed by this bill might be effectual. It would not be so; for Mary Rambo, one of the devisees of the land, is not a party, and being the complainant's wife, I do

not see how she can be made a party defendant, nor how, as he sues in a representative character, she can be joined with him as a party complainant.   She and her husband might be defendants to a bill filed by the other legatees to raise the legacies out of the land.   In no other way can her interest *in the land* be bound by a *sale in equity to raise the legacies.*

I have thought much on the best course to be taken, so as to avoid the delay and trouble of filing a new bill in the name of the legatee, and will take the liberty to recommend that the executor obtain from the Orphans' Court an order to sell for the payment of the *debts*.   In this way, a good title will be made to the purchaser, and, at the same time, the land converted into money in the executor's hands applicable to the legacies after paying the debts   As to the application of the surplus to the legacies, having the money in hand, he can take instruction of the Court upon the questions now presented.   Let the present bill stand until the land is sold, and the debts paid and the surplus ascertained, when these facts can be shewn in a short supplemental bill, which the defendants can confess as they have the original one.   The difficulty now arising from the executor's wife being a devisee, will not then exist ; for her title as devisee will have been divested by the sale under the order of the Orphans' Court ; and as a legatee she will be represented by her husband, to whom her legacy is given for her.

The order for sale can be obtained immediately.   The last Orphans' Court adopted as a practice, that the parties interested in real estate may personally appear in the Court and waive the written notice, prescribed by the statute, of applications by executors or administrators to sell land, &c.   There will be an adjourned Orphans' Court on the 31st of May ; and if desirable to these parties, it will be adjourned until some day after the Court of Appeals.   If Rambo and wife, and George B. Rumer, and

3—DEL. CH. IV.

the tenants in possession, will appear and consent to a sale to pay the debts, the Court will grant the order returnable to the September Term, and thus the matter can be finally disposed of as soon as by a sale under the prayer of this bill, and without any question as to the title made, or the propriety of the action of the Court. In saying that the Orphans' Court will grant an order at the adjourned sittings, I speak with the concurrence of Judge Wales.

On June 26th 1866, upon further consideration of the case, on motion of *T. F. Bayard*, for the complainant, leave was granted to amend the bill by inserting therein the name of Mary Rambo as a party defendant, and upon argument and further examination, upon the point, it was considered by THE CHANCELLOR that she might properly be joined as a defendant, and such amendment was made. Thereupon, the said Mary Rambo's appearance was entered by the Solicitor for the other defendants and her separate answer under oath, being waived, she joined in the answer of the other defendants, by signing the same in open Court.

THE CHANCELLOR then directed the entry of a decree, declaring that the real estate of the testator was charged, in aid of the personal estate, with the payment of his debts and legacies and was subject to be sold by the executor for raising the amount of any deficiency of his personal estate to pay the debts and legacies. It was further decreed that the legacies to Hester Stewart and Elizabeth Eastburn were liable, in case of a deficiency of both personal and real estate to pay both debts and legacies, to abate in like manner with the other legacies.

It being charged in the bill and admitted by the answer that a sale of the whole real estate would be necessary, such sale was ordered to be returned to the next term of the Court for confirmation. The proceeds,

---

Note.

---

after paying the expenses of sale and the costs of the cause and the debts of the testator and expenses of administration were directed to be applied towards the payment of the legacies, payment to be *pro rata*, if the surplus should be insufficient to pay the whole.

At the next term, the sale was returned and confirmed.

NOTE. There is nothing upon the record or among the Chancellor's papers to indicate the ground upon which the conclusion was finally reached that the complainant's wife could be joined as a party defendant.

A most diligent search, for notes of the argument upon the motion to amend by joining the complainant's wife as a defendant, has been ineffectual, neither are there to be found any memoranda of the views reached by the Court. The first expression of opinion was made without any argument upon that point, and seems to have been the statement of an impression without investigation.

After some examination of the authorities, no case has been found precisely like the present one, and the grounds of the final conclusion not appearing, it has been deemed best to let the report of the case show precisely what occurred. There is, however, sufficient authority for permitting a wife to be a defendant, while her husband is complainant in a suit in equity to fully justify the decision upon that point finally reached by the Court. There are a variety of cases in which, in a Court of Equity, a *feme covert* is treated as if she were *feme sole*. If she claim any rights in opposition to her husband, or if she lives separate from him or disapproves the defense he wishes her to make, and in some other cases, she may obtain an order to attend a suit separately. *Bac. Ab. vol. 1; 737; Calvert on Parties Ch. 3 Sec. 21; Sto. Eq. Pl. Sec. 71; Mitf. Eq. Pl. (Tyler's edition) 201.* It is laid down by the same authorities that, if a husband is complainant in a suit, and makes his wife defendant, he treats her as a *feme sole,* and she may answer separately under an order of the Court for the purpose. But there is no intimation in any of these text books that the joining of a wife as defendant, in a suit in equity by her husband, has any other effect than to be treated as an election by him to authorize her to appear and answer as a *feme sole.*

*In Brooks vs. Brooks, Prec. in Cha. 24,* it was declared upon a motion to commit the wife for not answering interrogatories in a suit by her husband, that a man could not be complainant in equity against the wife; but subsequently, the matter being moved again, the Court reversed its opinion and ordered the wife to answer.

In *Warner vs. Warner,* 1. *Dick.* 90, a bill was originally filed by the

husband against his wife and another for a discovery. The plaintiff and his wife lived together and she had no separate estate.

In *Cannel vs. Buckel,* 2 *P. Wms.* 243, a suit of the heir of the husband against the heir of the wife, upon a bond given by the wife to the husband before marriage, the lord Chancellor remarks: "In equity, it is constant expe-" rience that the husband may sue the wife or the wife the husband ; and the "husband might sue the wife upon this very agreement in the principal case.

*Ainslie vs. Nedlicott, 13 Ves. 266,* was a bill by a husband against his wife. Upon motion, an order was made that she should put in an answer.

Story says: (2 *Eq. Jnr. Sec.* 1368.)    "On the contrary, courts of equity, "for many purposes, treat the husband and wife as the civil law treats them, as "distinct persons, capable (in a limited sense) of contracting with each other, "of suing each other, and of having separate e states, debts and interests ; and "a wife may, in a court of equity, sue her husband and be sued by him." See, also, 1 *Dan. Ch. Pr.,* 142 (*note l* ) ; also pp. 143, *note y ; also* 190.