IN THE MATTER OF THE ESTATE OF ROBERT R. BURTON, DECEASED.

*Orphans' Court, Sussex, April 17, 1948.*

CAREY, Judge, sitting.

*Daniel J. Layton, Sr.,* for petitioners.

*H. Edward Maull,* for purchaser, Margaret E. Johnson.

*James M. Tunnell, Jr.,* administrator, in *pro. per.*

CAREY, Judge:

*Chapter* 99, *Revised Code of Delaware* 1935, provides the exclusive method of selling lands to pay debts of a decedent, in the absence of a suitable testamentary provision. The plan of procedure provided by this act, which has been in effect in substantially its present form since 1829, is by petition to the Orphans' Court after notice to interested parties, an order for sale, a public auction and confirmation by the court. The only part of the statute of material interest in this case is *Section* 3 (*Code Section* 3879), the latter part of which reads as follows:

"* * * * and the said Court shall have power, if it shall appear that there is a deficiency of personal estate for the payment of the deceased's debts, to order that the said executor, or administrator, shall sell the said real estate, or a part thereof to be specified in said order, for the purpose of supplying said deficiency: Provided, that no more shall be sold than the Court shall deem sufficient for that purpose, unless the Court shall consider that the condition of any premises is such that a part thereof, merely sufficient, could not be laid off and sold without injury to the whole, in which case the Court may order the whole, or any part of such premises to be sold, as may be deemed best for the parties interested."

Another provision of some interest is *Section* 17 (*Code Section* 3893) reading as follows:

"The Orphans' Court may, in its discretion, refuse an order for sale of real estate, or to approve a sale, if under the circumstances it is

considered improper that such sale should be made; although it should sufficiently appear that the personal estate is not sufficient for the payment of the debts, or that said sale was regularly conducted."

The Orphans' Court of this State has only such jurisdiction as has been conferred upon it by statute, although in matters within its jurisdiction, it may exercise equitable powers. *First Nat. Bank v. Andrews*, 26 *Del. Ch.*, 344, 28 *A.* 2d 676, 677. As Judge Speakman expressed it in the case of *In re Andrews, Admx.*, 3 *Terry* (42 *Del.*) 376, 34 *A.* 2d 700, 701,

"* * * although it [the Orphans' Court] can take jurisdiction originally only under an express provision of a statute or constitutional grant, once that jurisdiction is acquired, it can and should exercise such powers, equitable or legal, and apply such principles as may be incidental or necessary to completely determine the matter before it."

The authority of this court to order a sale of realty by an administrator exists solely by reason of the statute mentioned above and can be exercised only in accordance with the limitations and under the conditions therein contained. By virtue of *Section* 3, the court has no jurisdiction to order such a sale until it first determines that the personal estate of the decedent is insufficient to pay his debts. Furthermore, the power thus granted to the court is not absolute, but is definitely restricted by the concluding proviso which limits this power to a sale of only so much land as the "Court shall deem sufficient" to pay the debts, unless the court finds that a part cannot be sold without detriment to the whole. The wording of the act makes it clear that these matters are to be determined prior to the granting of the order for sale. Obviously, the court has considerable discretion but its discretion must be exercised at that stage of the proceedings rather than at some later point. It follows that a proper order should include a finding of deficiency of personal assets and a direction of what lands are to be sold. A determination of the latter question necessarily involves some inquiry into the condition, type, value and divisibility of the land. In most instances, no doubt the court must rely heavily upon information given by the per-

sonal representative, but certainly the heirs will be heard if they appear. In any event, the plain design of the statute is that the court shall, before signing the order, receive such information as will enable it to determine what lands ought to be sold, if it appears unnecessary to sell all of them.

In the present instance, since the heirs did not appear, the court had only the benefit of information furnished by the administrator. He presented facts tending to indicate that tract No. 2 probably would not bring enough to make up the deficiency but that tract No. 1 would do so. Thereupon the court orally directed him to sell tract No. 1. The order signed did not include such a direction but ordered the sale of all of the real estate, or so much thereof as might be necessary to make up the deficiency. The failure to include the specific direction in the written order is not, in my opinion, such an irregularity as would justify a refusal of confirmation. It could be cured by a *nunc pro tunc* order upon the theory that the written decree did not conform to the actual order made in open court. See 30 *Am. Jur.* 866.

Error lies in another direction. It was stated to the court at the original hearing that tract No. 1 was expected to bring from $3000 to $4000. The amount needed for debts and expenses did not exceed $1000. No evidence was presented and no inquiry made as to whether or not a part of tract No. 1 could be sold without injury to the whole. There is nothing in the description of the land to suggest that it might not be divided without detriment, since it consists of about 33 acres with no buildings. In any case, the matter was not dealt with according to the express mandate of the statute, which limits the power of the Orphans' Court to the sale of only so much land as the court deems necessary to pay the debts, unless the court finds the premises to be indivisible without injury to the whole. In the absence of a finding of indivisibility without detriment, the order to sell the whole was in excess of the court's power.

It has been suggested that the heirs, by failing to appear at the original hearing and by making no objection at the

time of sale, cannot now object to confirmation. I have seen no authority which so holds. It must be remembered that this action is a direct, not a collateral, attack upon the sale. The cases which bar objection by heirs on the ground of estoppel or *res judicata* involve collateral attacks. See 21 *Am. Jur.* 755. Whether the irregularity here existing could be raised collaterally is a matter beyond the scope of this opinion. Here the heirs have acted in time; no sale has as yet been consummated because under the act confirmation is a prerequisite to a completed sale; the action is still in the bosom of the court. The high bidder was bound to know, when she made her bid, that she might never acquire the property; the necessity of confirmation was set forth in the advertisements and was announced before the bidding started; any expense so far incurred by her in the matter has therefore been with knowledge that confirmation might be refused. The situation might be completely different in a case where the sale has been confirmed and the purchaser has entered into possession.

It is also pointed out that the procedure which the court followed in this case was in accordance with a practice of some thirty years' standing, and, in fact, that the order signed was in the form drawn by Chancellor Curtis in 1917. The forms which he prepared were not made a part of the rules of this court although they were printed in the same book as the rules; they do not have the force and effect of rules; they are more in the nature of suggestions subject to adaptation to the needs of any given case. Clearly, their purpose is not to alter the statutes. Furthermore, plain statutory restrictions upon the powers of an inferior court cannot legally be disregarded by that court, if called to its attention, regardless of any former practice. As Chancellor Wolcott said in speaking of a different kind of practice, it "cannot be allowed the force of overruling the clear meaning of the statute. This is the first time that the point has ever been presented in our courts, and it must be answered as the statute compels." *In re Vandyke's Estate*, 15 *Del. Ch.* 459, 136 *A.* 147, 148.

In determining what lands are to be sold, a wide judicial discretion necessarily exists which will not be lightly overruled. Here, however, the court failed to exercise its discretion at all and there was no evidence warranting the judgment for the sale of all the lands. See *Ware's Guardian v. Ware*, 233 *Ky.* 109, 25 *S.W.* 2d 56. Because of a desire to maintain the highest respect for its sales, this court has always been extremely reluctant to refuse confirmation, but in this instance the court exceeded its statutory power and the sale must be set aside. It is accordingly unnecessary to consider the adequacy of the price. The heirs may now see fit to advance the funds necessary to pay the debts in order to eliminate the necessity for a resale. If not, the administrator will be directed to sell tract No. 2, since it is now apparent that it will bring somewhat more than is needed for that purpose and since it seems reasonably clear that it should be sold in its entirety, in view of all the circumstances. Costs of this proceeding will be imposed upon the estate.