WILLIAM T. KNOWLES,

*vs.*

JOHN W. WILLIAMS, JOHNNIE MAE ADAMS, REBECCA WRIGHT, MATTHEW J. WILLIAMS, DEMETRIUS C. NEWTON, ALBERT J. STIFTEL, Administrator D.B.N.C.T.A. of the last will and testament of Lillian E. Gaitwood, SHIRLEY M. ADAMS, HERBERT CHARLES THOMPSON, STEPHANIE A. HUNT, minor, ANNA B. COMEGYS, LOIS ADAMS WILLIAMSON.

*New Castle, January 26, 1954.*

*William T. Knowles,* Wilmington, plaintiff, *pro se.*

*J. D. Winslow,* Wilmington, for defendant Albert J. Stiftel, administrator.

*Leighton S. Dorsey,* Wilmington, for defendants John W. Williams and Johnnie Mae Adams.

*Howard M. Berg,* Wilmington, guardian *ad litem* for Stephanie A. Hunt, minor, *pro se.*

SEITZ, Chancellor : Plaintiff characterizing himself as trustee seeks the instructions of this court with respect to the disposition of certain real estate to which he admittedly holds only deed title. Defendant-administrator has filed cross-claims seeking authority to sell the property to pay debts and also seeking a construction of the will of the alleged equitable owner, now deceased.

On March 29, 1935, Louis Gaitwood and his wife, Lillian E. Gaitwood (hereafter called "deceased") took title as tenants by the entireties to a piece of real estate known as 1323 Tatnall Street, Wilmington. In conjunction with a divorce proceeding commenced by the deceased against her husband on March 1, 1949, she and her husband entered into a so-called escrow agreement dated March 7,

1949, by which plaintiff, denominated as escrow agent, was to take title to the real estate, subject however to the deceased's instructions with respect to its disposition. The Gaitwoods also executed deeds to the escrow agent. It was further provided that if the deceased should die "after a decree nisi has been granted or prior to the final decree", the escrow agent should transfer the property to the defendant, Johnnie Mae Adams.

The divorce became final on September 9, 1949. The deceased died testate July 15, 1950, without having caused the legal title to be transferred out of the escrow agent's name. Neither the escrow agreement nor the deeds have been recorded.

After the filing of the complaint and the two cross-claims, a default judgment was entered against many of the defendants, including the defendant, Herbert Charles Thompson. The case was submitted for decision on the basis of the pleadings and certain stipulated facts.

The court is asked to rule on the following two questions:

1. Under the terms of the escrow agreement of March 7, 1949, did the deceased, after the divorce became final, obtain the absolute equitable ownership of the real estate or did she only have an *inter vivos* power of appointment?

2. Assuming that the escrow agreement gave the deceased the absolute equitable interest in the real estate, how did she dispose of it under the provisions of her will?

I now consider the first question presented. Counsel for Johnnie Mae Adams and John W. Williams contends that the trust agreement only gave the deceased an *inter vivos* power of appointment to others or to herself with respect to such property after the divorce became final and during her lifetime. Since she did not exercise the power, they say it passed to Johnnie Mae Adams, under the terms of the escrow agreement. Counsel for the administrator and the guardian *ad litem* for Stephanie A. Hunt both contend that the escrow agreement gave the deceased the entire equitable ownership of the property after the divorce became final.

The language of the escrow agreement is far from clear. Some language therein does sound like language creating only an *inter vivos* power of appointment, but I think the tenor of the instrument read as a whole when considered in conjunction with the fact that it was executed to relieve the husband of his obligation of support, makes it evident that the deceased was to have exclusive equitable title after the divorce became final. The escrow device was apparently used because of the entireties nature of the property and the desire of the attorney to secure his fee.

Counsel for Johnnie Mae Adams relies on the language in the agreement that "in the event Lillian E. Gaitwood should die after a decree *nisi* has been granted or prior to the final decree, that the said escrow agent shall transfer the said property to Johnnie Mae Adams." He says in effect that she did die after the decree *nisi* and the "or" is significant. I cannot agree. The use of the disjunctive "or" instead of "and" in dealing with the disposition of the property if the deceased died after a *nisi* but before a final decree is nothing more than poor grammar in view of the clear language, not only of that provision but of the instrument generally. The quoted provision was intended to cover a situation which did not arise, viz., death of the deceased during the period of the *nisi*. In this connection, it must be remembered that at that time the period was one year and the deceased was not well.

I therefore conclude that, under the escrow agreement, after the divorce decree became final the deceased became possessed of complete equitable ownership of the property subject to payment of legal fees (any Statute of Uses question aside). The trustee, having no other duties, at her death, became trustee of a passive trust.

Having ascertained that the deceased held equitable title to the real estate at the date of her death at which time the trust became passive, the property was therefore subject to use for the payment of her debts in the event her personal property was insufficient, as it was. However, this court, on its own motion, raised a question as to its jurisdiction to authorize the administrator to sell the property to pay debts and to construe the will in order to see to the proper distribution of the balance.

■ It appears that the Orphans' Court has exclusive jurisdiction by statute to order the sale of real estate of a decedent to pay his debts at least where no duty with respect to the sale is imposed by the will. *Rambo v. Rumer, 4 Del.Ch. 9; Christy v. Sharpe,* 11 *Del.Ch.* 28, 95 *A.* 299; and see *Security Trust Co. v. Spruance,* 20 *Del.Ch.* 195, 174 *A.* 285. The person denominated executor, since replaced by an administrator, is given certain rights with respect to the real estate as the following quotation from the will shows:

> "IV. I direct my executor [Herbert Charles Thompson] to keep my home—1323 Tatnall St.—intact as to both the house itself and its furnishings. It is to be held by Herbert Charles Thompson, to his use, for his life, providing however, that he will offer it, as a home for life without cost to my father, John W. Williams.

> "V. At the death of my father, the life tenant may sell the house and its furnishings and the sum realized divided as follows:

> "1—one-fourth to my lawful heirs.

> "2—one-fourth to my God-child, Stephanie A. Hunt.

> "3—one-half to Herbert Charles Thompson.

> "If, at the death of Herbert Charles Thompson, there has been no disposition of the home and the furnishings of 1323 Tatnall St. I direct that it be sold and distributed as follows:

> "1—one-third to my God-child, Stephanie A. Hunt.

> "2—remainder to my lawful heirs."

■ However, it is apparent that the rights given the "executor" in the quoted language are not granted to the executor as such. Rather, I believe the use of the word "executor" is only for identification of the individual. Therefore, it cannot be said that the executor as such is given a duty with respect to the real estate by the terms of the will.

The case of *Christy v. Sharpe, supra,* also expresses doubt that this court has jurisdiction to give instructions to an executor as to the method of performing a duty not imposed by the will, viz., sale to pay debts. Such is exactly the situation here presented.

In their answers to the court's request for comment on its doubt as to its right to authorize the sale to pay debts and to construe the will under the circumstances, counsel argued that this court has concurrent jurisdiction or has jurisdiction on the theory that having admitted jurisdiction for certain purposes, it may go ahead and dispose of the entire matter.

As to the concurrent jurisdiction argument, it appears that the power to sell to pay debts, absent a testamentary provision, is purely statutory. See *In re Burton's Estate,* 30 *Del.Ch.* 615, 59 *A.2d* 278; and see 3 *Woerner—The American Law of Administration,* (*3rd edition*) § 463. And as stated, our statute has been construed to grant exclusive jurisdiction in this matter to the Orphans' Court. *Rambo v. Rumer, supra; In re Burton's Estate, supra;* and 3 *Woerner, The American Law of Administration,* (*3rd edition*) § 464.

As to the argument that having once taken jurisdiction, equity will dispose of all other matters involved, I can only say that this principle, like all generalizations, must of necessity have limitations. Here the request is based solely on a power granted another court by certain statutes which also contain a well-defined procedure governing such cases, including a statement of the title acquired by the purchaser. Therefore, even assuming that jurisdiction in this matter might possibly be spelled out, I believe that in the exercise of my discretion I should not attempt to take such jurisdiction in view of our case law and the fact that title to real estate is involved.

I therefore conclude that the cross-claims should be dismissed without prejudice to the extent they seek authority to sell the real estate to pay debts and a construction of the will in aid of that objective.

Plaintiff will be directed to record the escrow agreement and the deeds to him. I assume that his rights with respect to his fee for legal services rendered the deceased will be given appropriate consideration by the Orphans' Court in making distribution of the proceeds of sale.

Order on notice.