## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| Estate of Bennie P. Farren | ) | C.A. No. 8714-MA |
| | ) | |

| | | |
|---|---|---|
| Patricia A. McGlaughlin, as Successor | ) | |
| Trustee of the Hercules Living Trust and | ) | |
| Beneficiary of the Hercules Living Trust, | ) | |
| Petitioner | ) | C.A. No. 9385-MA |
| v. | ) | |
| | ) | |
| Andrew P. Farren, as Executor of the | ) | |
| Estate of Bennie P. Farren under the Will | ) | |
| Of Bennie P. Farren, and in his individual | ) | |
| Capacity, | ) | |
| Respondent. | ) | |

## MASTER'S REPORT

Date Submitted: February 11, 2015
Draft Report: December 9, 2014
Final Report: June 18, 2015

A decedent left his solely-owned residence in Laurel, Delaware and other solely-owned assets to a trust. Under the terms of the trust, decedent's lady friend was granted a life estate in the residence and the funds necessary to pay the monthly bills of the residence. Upon the lady friend's death, her grandson was to receive the residence free and clear of any trust, and any residue was to be divided between decedent's two sons. Under the terms of decedent's last will and testament, his brother was named executor and decedent's son was named

successor executor. After the brother renounced his fiduciary appointment, decedent's son was granted letters testamentary by the Sussex County Register of Wills.[1] Thereafter, decedent's ex-wife, who is the mother of his two sons, filed a claim against the estate in the amount of $228,459.47, purportedly for past due child support with interest thereon. The executor accepted the claim as a just debt of the estate, and on July 10, 2013, filed a petition to sell the real property to pay the decedent's debts under 12 *Del. C.* § 2701. The lady friend objected to the petition to sell, and filed a petition to remove the son as executor. For the reasons that follow, I recommend in this final report that the son be removed as executor for breach of his fiduciary duties, and that the petition to sell the real property should be dismissed without prejudice.

I.    BACKGROUND

The decedent, Bennie P. Farren, separated from his ex-wife, Rebecca Courson, in the late 1970s, when his son Andrew was about four years old, and Farren had no further contact with Andrew until Andrew was about 30 years old.[2] Although he never remarried, Farren lived with Patricia McGlaughlin for nearly 30

---

[1] I use first names to avoid confusion and repetition, and intend no disrespect by this practice.

[2] Appendix to Opening Brief in Support of the Motion for Summary Judgment of Patricia A. McGlauglin, at 1-2 (Deposition of Andrew P. Farren at 4-8) (hereinafter "Appendix").

years and had a close relationship with McGlaughlin's grandson, Jared Smith.[3] Farren met his own two grandsons only once about a year before his death, when Andrew drove his family to Ocean Pines to show them the neighborhood where he had lived as a child.[4] Farren died on September 12, 2012. Andrew attended his father's funeral, but his brother Troy did not attend because he was in Europe on business.[5]

After Andrew assumed the duties of executor of his father's estate, he paid Farren's funeral bill, the estate attorney's fees, and Farren's property taxes.[6] As executor, Andrew rejected a claim for $4,254.13 plus interest for legal fees that had been incurred by Farren in connection with a Child Support - U.S. Bankruptcy Court Judgment Order dated May 17, 1990, and a Final Order of Custody and Support in the Florida Circuit Court dated July 29, 1986.[7] Andrew rejected this claim because he thought the Florida attorney already would have written off the loss on her books.[8] Andrew accepted his mother's claim of $228,459.47 for past child support because, in his opinion, it was an outstanding debt that needed to be

---

[3] Ex. A of Respondent's Answering Brief, (Deposition of Patricia A. McGlaughlin at 26-27) (C.A. No. 9385-MA, Docket Item ("DI") 19.
[4] Appendix at 2 (Farren Deposition at 6-8),
[5] *Id.* at 24 (Farren Deposition at 93-94).
[6] *Id.* at 5 (Farren Deposition at 17-20).
[7] *Id.* at 41 (Statement of Claim).
[8] *Id.* at 13-14 (Farren Deposition).

paid.[9]  However, before he accepted this claim, on February 15, 2013, the estate attorney, George B. Smith, Esquire, wrote a letter to McGlaughlin's attorney, A. Dean Betts, Jr., Esquire, stating:  "We propose to accept and agree to [Courson's claim] unless you and your client agree to pay all the costs of opposing it."[10]  On June 5, 2013, Smith wrote to Betts that the executor had decided to honor Courson's claim in the amount of $228,459.47, and his only option was to obtain a court order to sell Farren's former residential real estate to pay debts.[11]  Smith continued:  "Alternatively, [McGlaughlin] may forward funds sufficient to pay the claim, or mortgage the property to generate cash.  … If we don't hear from you [within ten days], we will proceed in Chancery."[12]

Andrew filed a petition for sale of the real property on July 10, 2013.[13] Attached to the petition was an estate inventory listing a total of $48,732.07 in mortgages, notes, and cash owned by decedent at the time of his death, in addition to the real estate improved by a single-family dwelling in Laurel, Delaware valued at $176,000.  The petition listed the following debts:  (a) $13,920 in funeral expenses; (b) $718.62 for Sussex County taxes; and (c) a claim in the form of a

---

[9] *Id.* at 13 (Farren Deposition at 50-51); *id* at 28 (Farren Deposition at 109-110).
[10] *Id.* at 31 (letter dated February 15, 2013, from George B. Smith, Esq. to A. Dean Betts, Jr., Esq.).
[11] *Id.* at 36 (letter dated June 5, 2013, from George E. Smith, Esq. to A. Dean Betts, Jr., Esq.).
[12] *Id.*
[13] *In re:  Estate of Bennie P. Farren*, Del. Ch., C.A. No. 8714-MA, DI 1.

judgment for past due child support in the State of Florida for $228,459.47. In addition, the petition listed $6,479.98 in estate expenses that had already been paid. On August 19, 2013, McGlaughlin objected to the petition to sell the real property, contending that the only debt that could not be paid out of the liquid assets of the estate was Courson's claim, and this claim was not based upon a foreign judgment.[14] McGlaughlin alleged that the Courson claim was based instead upon a certified copy of an "Arrearage Affidavit" issued by the Circuit Court of the Ninth Judicial Circuit in and for Osceloa County, Florida purporting to show an arrears balance of $24,300 as of January 18, 2013, and an "Affidavit of Child Support and Interest Owed" prepared by a certified public accountant, which contained double hearsay since the information on which the accountant had relied was provided by Courson, whose information presumably came from the Florida court.[15]

Thereafter, on Feb. 24, 2014, McGlaughlin filed a petition to remove Andrew as executor of his father's estate, alleging that Andrew breached his fiduciary duty to the beneficiaries of the estate by failing to contest and resist paying an unjust and unfounded claim against the estate.[16] On March 20, 2014, Andrew responded to McGlaughlin's petition, alleging in part that McGlaughlin's

---

[14] Answer and Objection of Patricia A. McGlaughlin to Petition to Sell land to Pay Debts at ¶ 5, DI 6.
[15] *Id.*

petition was superfluous, duplicative and a waste of judicial resources, since McGlaughlin's objections to the Courson claim were essentially identical to her objections raised in the other case (C.A. No. 8714-MA).[17] On April 15, 2014, the parties filed cross-motions for summary judgment in C.A. No. 8714-MA.[18] On July 15, 2014, McGlaughlin moved for summary judgment in C.A. No. 9385-MA.[19]

Following briefing on the motions, oral argument took place on December 9, 2014, during which Andrew's counsel conceded that the accountant should not have compounded interest monthly on the child support arrears.[20] I issued a draft report from the bench, recommending that the petition to sell real property be denied because the executor breached his fiduciary duty by accepting a claim in the amount of $228,459.47, which was not the amount of arrears shown in the certified court documents submitted by the claimant, but was based instead on an illegal calculation of compound interest.[21] Had the executor simply accepted a claim of $24,300, which was the amount of arrears on January 13, 2013, as certified by the Florida court, there would have been sufficient assets in the estate to pay this debt

---

[16] *McGlaughlin v. Farren*, Del. Ch., C.A. No. 9385-MA, DI 1.
[17] Response to Petition to Remove Executor of Estate. DI 5.
[18] DI 15 & 18 (C.A. No. 8714-MA).
[19] DI 17 (C.A. No. 9385-MA).
[20] Transcript of Oral Argument on December 9, 2014, at 27, 30. DI 23 (C.A. No. 9385-MA).
[21] *Id.* at 46-48.

without having to sell the real estate. Instead, the executor improperly attempted to shift the burden of defending the estate against this claim onto the estate's beneficiary, i.e., the trust, and then accepted the claim without sufficient proof because of his relationship with the claimant.[22] I also recommended that Andrew to be removed as personal representative of the Estate of Bennie P. Farren for breach of his fiduciary duty to the beneficiaries.[23] Andrew took a timely exception to my draft report on December 15, 2014.

II. ISSUES

Andrew takes exception to my conclusion that Courson was required first to register a Florida support order in Family Court before presenting a claim against the estate.[24] Andrew argues that the amount stated in the affidavit from the Florida court did not include interest, and since the calculation of interest is a simple clerical function that can be undertaken by any court, the absence of such a final calculation by a clerk of the Florida court should not have been an impediment to the claim. Further, Andrew argues that because the time of presentation of claims

---

[22] *Id.* at 49.

[23] *Id.* at 50-51. The remainderman, Jared Smith, was allowed to intervene in both actions, and relied upon and adopted McGlaughlin's arguments as his own. C.A. 8714-MA, DI 26 & 37; C.A. 9385-MA, DI 13 & 26.

[24] In fact, what I said was that the claimant "may very well deserve child support arrears plus interest [but] she should have done her homework and presented the claim with all the proper proofs, and at this point, I think this Court is not the Court that should determine those amounts. Whether she goes to the Delaware Family

under 12 *Del. C.* § 2102 is severely limited, if Courson is first required to register a support order in Family Court, there is a distinct possibility that the subsequent presentation of her claim would be time-barred. In addition, Andrew argues that registration would be a pointless act because Family Court has no enforcement power on claims brought against a decedent's estate. Since equity does not require a useless act to be undertaken, Andrew contends that there should be no requirement that a final order from the State of Florida be registered in Family Court.

Andrew also takes exception to my recommendation of a complete dismissal of the petition to sell lands. Instead, he contends that the matter should have been stayed pending an offer by the claimant to register the Florida order in Family Court, although he is doubtful that the Family Court would accept such a filing since there is no indication that any such registration has occurred since the Family Court's decision in *Pierce v. Higgins*, 531 A.2d 1221 (Del. Fam. Ct. 1987). Finally, Andrew takes exception to my recommendation that he should be disqualified or removed because of a conflict of interest. Although his argument is not entirely clear, it appears to be based on the fact that Farren named his son as successor executor when he could have just as easily named McGlaughlin or some unrelated third party as his personal representative to avoid a potential conflict.

Court or back to the Florida court to obtain a proper judgment, that's her choice."

Alternatively, Andrew argues that his father could have re-titled the real estate in a joint tenancy with McGlaughlin to take the residence out of his estate altogether, thus ensuring that McGlaughlin had the right to the real property upon his death. Since Farren did none of those things, Andrew argues that this Court does not have the power to re-write Farren's will simply because of events that Farren might not have anticipated.

McGlaughlin argues that Andrew's exceptions should be summarily dismissed because Andrew failed to follow Court of Chancery Rule 144(a),[25] which requires an exceptant to order a transcript of a Master's bench report from the record. In this case, Andrew did not file a request for the preparation of a transcript of the draft report that I issued from the bench; instead, McGlaughlin requested a complete transcript of the oral argument and bench ruling. For this reason, McGlaughlin argues that Andrew's exceptions should be dismissed as waived under Rule 144(b)(1).[26] In the alternative, if the Court does not dismiss

---

Transcript of Oral Argument, at 49.

[25] Rule 144(a)(1) provides in relevant part: "The draft report may be provided to the parties in writing or may be entered into the record from the bench. In the latter case, any party taking exception to the draft report shall order a transcript of the report from the record, which shall serve as the text of the report for purposes of review by the Master and the Court."

[26] Rule 144(b)(1) provides in relevant part: "In all cases in which a party files exceptions to the Master's draft report, the party shall, with the notice of exception, serve and file a designation and request for the preparation of the transcript of those portions of the proceedings it deems necessary for inclusion in the record. A copy of the designation and request shall also be delivered to the court reporter.

the exceptions as a sanction for Andrew's failure to abide by Rule 144, McGlaughlin argues that the exceptions should be denied because registration of the Florida support order must occur in order to determine (a) whether the Florida Arrearage Affidavit includes all interest and fees owed, (b) which state's law applies, (c) whether interest is available at all, and (d) whether there are any defenses that can be asserted. According to McGlaughlin, Family Court has exclusion and original jurisdiction to hear and determine matters involving child support under Title 13, Chapter 6 of the Delaware Code and 10 *Del. C.* § 921(3) and (9).

McGlaughlin also argues that Andrew's argument regarding the time requirements of filing claims against an estate is simply a smoke screen because if Courson's claim had been initially rejected by the executor, Courson would have had an additional three months to file in Family Court to register her Florida order for enforcement under 12 *Del. C.* § 2102(c).[27] McGlaughlin contends that staying

---

… . Any party who fails to request a transcript under this subsection as to any portion of the proceedings waives any right to rely upon that portion of the proceedings in support of that party's arguments favoring or opposing an exception to the report."

[27] 12 *Del. C.* § 2102(c) provides: "Any claim not barred under subsections (a) and (b) of this section which has been rejected by an executor or administrator shall be barred forever unless an action or suit be commenced thereon within 3 months after the executor or administrator has notified the claimant of such rejection by writing known to the executor or administrator; provided, however, in the case of a claim which is not presently due or which is contingent or unliquidated, or to avoid injustice the Court of Chancery, on petition, may order an extension of the 3-month

the proceedings, rather than dismissing the petition, in order to allow the claimant an opportunity to offer to register the Florida court order in Family Court would be speculative at best, and a dismissal would not prevent Andrew from filing a similar petition to sell real estate in the future should the need arise. Finally, McGlaughlin argues that Andrew's exception to my recommendation that he be removed as executor should be denied because Andrew mischaracterizes my recommendation as predicated upon a conflict of interest, when it was based instead upon his breach of the fiduciary duty to the estate beneficiaries.

III.    ANALYSIS

I should dismiss Andrew's exceptions as waived under Rule 144 because he failed to order the transcript of my draft report issued from the bench. Because of the significance of the legal issues presented, however, I will address Andrew's exceptions. This Court can order the sale of realty by an executor or administrator of estate only in accordance with the provisions of 12 *Del. C.* § 2701(a),[28] which states:

> When the personal estate of a decedent is not sufficient to pay the decedent's debts, the decedent's executor or administrator may present to the Court of Chancery of the county in which there is any real estate of the decedent a petition outlining such facts, and praying for an order for sale of the whole, or such part thereof, if the personal estate is not sufficient for that purpose.

period, but in no event shall the extension run beyond the applicable statute of limitations."
[28] *In re Estate of Burton*, 59 A.2d 278 (Del. Ch. 1948).

The issue before me, therefore, is whether the executor has demonstrated that the personal estate of the decedent is insufficient to pay his debts. After payment of taxes, funeral and administrative expenses, the net personal estate of the decedent consisted of approximately $27,600. Although the child support claim filed against the estate far exceeds the decedent's personal estate, the executor has conceded that the claimaint's calculation of compound interest was in error. Assuming, without deciding, that the child support arrears owed by the decedent at the date of his death equal $24,300, the amount shown on the certified copy of the Arrearage Affidavit dated January 18, 2013, the estate would have had sufficient assets to pay this claim without having to petition to sell the realty.

Although the executor now argues that this Court can and should perform what he describes as the clerical or ministerial act of calculating simple interest on the child support arrears, it remains unclear to me: (1) whether the amount shown on the Arrearage Affidavit includes interest or not; and (2) whether the claimant is entitled to any interest on this amount as a matter of law. Furthermore, it does not appear that this Court has jurisdiction to determine whether, as a matter of law, the claimant is entitled to interest on the child support arrears or to calculate any interest owed. Delaware Family Court has exclusive original jurisdiction over:

> the construction, reformation, enforcement and rescission of agreements made between future spouses, spouses and former spouses

concerning the payment of support or alimony, the payment of child support or medical support, the division and distribution of marital property and marital debts and any other matters incident to a marriage, separation or divorce. The Court shall have jurisdiction to resolve any issues resulting from the construction, reformation, enforcement or rescission of an agreement. In this regard, the Court shall apply the statutory factors set forth in Chapters 5, 6 and 15 of this title.[29]

Under the Uniform Interstate Family Support Act, which is found in Chapter 6 of Title 13, the estate of a decedent who is liable under a support order is considered an obligor.[30]

Thus, Family Court has exclusive jurisdiction to determine the amount of arrears owed by the decedent at the time of his death, and to reduce those arrears to a judgment provided that the proper proofs are made.[31] The fact that Family Court lacks the authority to enforce such a judgment against the personal representative of the decedent's estate does not render the claimant's action in seeking a judgment from the Family Court futile because the claimant may return to this Court to enforce the judgment.[32] Accordingly, I am dismissing this exception; however, to the extent that my oral draft report was construed as recommending that the petition to sell real estate to pay the decedent's debts should be dismissed with prejudice, I am modifying my draft report to recommend that the dismissal be

---

[29] 13 *Del. C.* § 507(a).

[30] 13 *Del. C.* § 6-102(13)(c).

[31] *See Pierce v. Higgins*, 531 A.2d 1221, 1227-1228 (Del. Fam. 1987).

[32] *See B.C. v. M.W. Sr.,* 2008 WL 1948040, at *3 (Del. Fam. Jan. 28, 2008).

without prejudice to ensure that if Family Court reduces the child support arrears to a judgment in an amount exceeding the remaining personal estate, the executor would not be precluded from filing another petition under 12 *Del. C.* § 2701.

Regarding the second exception, my recommendation to remove Andrew as executor for breach of his duty of loyalty and care to the estate's beneficiaries is not the equivalent of rewriting the decedent's will; rather it is aimed at ensuring the proper administration of the decedent's estate. The record reveals that Andrew accepted his mother's claim of $228,459.13 in back child support around the same time as he rejected a smaller claim of $4,254.47 (plus interest at legal rate) from the attorney who had represented his father in custody and child support proceedings in the Florida Court and U.S. Bankruptcy Court.[33] His review of his mother's claim consisted only of confirming the Florida legal rate of interest and replicating the calculation of compound interest that had been performed by his mother's accountant.[34] Andrew accepted without question that compound interest was appropriate in the first place.[35] Then, Andrew attempted to shift the burden of defending against his mother's claim on the beneficiaries of the decedent's real

---

[33] Appendix at 41-42 (Statement of Claim).

[34] *Id*. at 8-9, 17 (Farren Deposition).

[35] Under Florida law, compound interest is prohibited. *See Melvin v. Melvin*, 391 So.2d 691, 692 (Fla. Dist. Ct. App. 1980) (citing *Coggan v. Coggan*, 183 So.2d 839 (Fla.2nd Dist. Ct. App. 1966)).

estate.[36]  Although Andrew had a fiduciary duty to the creditors of his father's estate, by failing to exercise reasonable care in reviewing his mother's claim, Andrew breached his fiduciary duty to the beneficiaries of his father's estate.  For all of these reasons, I conclude that Andrew breached his duty of loyalty and care and should be removed as the personal representative of the decedent's estate.  This exception is dismissed.

CONCLUSION

For the reasons stated above, the exceptions to my draft report are dismissed except to the extent that I am clarifying that the recommendation to dismiss the Petition to Sell Real Estate to Pay the Decedent's Debts should be without prejudice.  My recommendation to grant the petition to remove the executor remains unchanged.  The parties are referred to Court of Chancery Rule 144 for the process of taking exception to a Master's Final Report.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz
cc:

---

[36]  Appendix at 31 (letter dated Feb. 15, 2013 from George B. Smith, Esq. to A. Dean Betts, Jr., Esq.).